ESTATE OF JULIUS C. LANG, DECEASED, AND RICHARD E. LANG, EXECUTOR, AND GRACE E. LANG, EXECUTRIX, OF THE ESTATE OF JULIUS C. LANG, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68316. Promulgated April 15, 1936.

*H. B. Jones, Esq.,* for the petitioners.
*Elden McFarland, Esq.,* for the respondent.

#### OPINION.

McMAHON: This is a proceeding for the redetermination of a deficiency in Federal estate tax in the amount of $75,136.91.

It was stipulated that, for the purpose of this proceeding only, the true valuation of the bond of the Dittenhofer Realty Co., a part of decedent's gross estate, is $44,444; and that a deficiency in income tax

in the amount of $661.85 for the period January 1 to December 23, 1929, is allowable in its entirety as a separate debt of the decedent, in addition to the amount of $20,646.55 which was paid on the separate return filed for the decedent for the above period and allowed by the respondent in full; and effect will be given to such stipulation in the recomputation under Rule 50.

In the interest of brevity we set forth the errors on the part of respondent alleged in the amended petition and not disposed of by stipulation or waived by the petitioners at the hearing, make our findings of fact, and render our opinion as to each separately.

I.

It is alleged that the respondent erred in including in the gross estate of decedent insurance in the sum of $232,514.27, or in excess of one-half thereof, or $116,257.14, subject to deduction of an exemption of $40,000.

*Findings of Fact.*—Julius C. Lang died testate on December 23, 1929, and at the time of his death was a resident of Seattle, King County, Washington. His last will and testament, appointing Grace E. Lang, his widow, and Richard E. Lang, his son, as executors, was duly admitted to probate in the Supreme Court of the State of Washington, for King County. Grace E. Lang and Richard E. Lang were duly appointed, and ever since have been and now are the duly qualified and acting, executors of the estate of Julius C. Lang, deceased.

The decedent came to Seattle, Washington, in the year 1902. He and Grace E. Lang, his surviving spouse, were intermarried at St. Paul, Minnesota, on or about November 15, 1905, and thereupon made their home in Seattle, Washington, and at all times thereafter and until the death of the decedent were husband and wife and citizens and residents of the State of Washington, residing in Seattle.

The petitioners filed a Federal estate tax return for the estate of the decedent on November 29, 1930, with the collector of internal revenue, District of Washington.

At the time of decedent's death he had 17 life insurance policies in force and effect on his own life, petitioners' Exhibits 1 and 2, which are hereby made a part of these findings of fact by reference. The decedent's wife is named as beneficiary in all the policies, except three, wherein decedent's children, Richard E. Lang, Howard M. Lang, and Dorothy Lang, respectively, are named as beneficiary. The right to change the beneficiary is reserved to the insured in each policy. The petitioners reported these policies in the Federal estate tax return at a total value of $215,166.40 but included only one-half thereof, or $107,583.20, less the exemption of $40,000, as a part of decedent's estate subject to tax. The respondent in his recomputa-

tion of the Federal estate tax determined that the policies had a value of $234,562.29 and included the whole of such amount, less the exemption of $40,000, in the gross estate of the decedent.

The premiums on all the above policies, excepting four thereof, were paid after the marriage of decedent out of community funds. The premiums on the four policies, in all of which decedent's wife is named as beneficiary, were paid in part prior to marriage and in part after marriage out of community funds. The percentage of such premiums paid prior to and after marriage and the value of such policies as fixed by the respondent are set forth in the margin [1] and hereby made a part of these findings of fact.

*Opinion.*—The respondent, under section 302 (g) of the Revenue Act of 1926, included in the gross estate of decedent the value of $234,562.29 as determined by him, less the exemption of $40,000, of 17 life insurance policies taken out by decedent on his own life, in 14 of which the wife was named as beneficiary and in 3 of which their 3 children, respectively, were named as beneficiary. The value of such policies, as determined by respondent, is not in dispute. The petitioner, however, contends that, under articles 25 and 28 of Regulations 70 (1929 Edition), and the community property laws of the State of Washington, a proportionate part of the proceeds or value of such policies, corresponding to the portion of premiums paid with community funds, constitutes community property, and one-half thereof should be eliminated from the gross estate of decedent because it is the property of the wife and not of the decedent.

A similar question, involving the community property law of Louisiana, was decided adversely to the contention of the petitioners here in *Jacob K. Newman et al., Executors*, 29 B. T. A. 53; affirmed in *Newman* v. *Commissioner*, 76 Fed. (2d) 449; certiorari denied, 296 U. S. 600, wherein it was held that proceeds of life insurance policies, in which the wife was named as beneficiary, in excess of the $40,000 exemption, are includable in the gross estate of the deceased husband, notwithstanding that all the policies except one were

---

[1] See table:

| Name of company | Date of policy | Percent of premiums paid— | | Value fixed by respondent |
| | | Prior to marriage | After marriage | |
| | | *Percent* | *Percent* | |
| Mutual Life of New York | Dec. 22, 1897 | 40 | 60 | $5,039.00 |
| Do | June 7, 1901 | 25 | 75 | 5,021.83 |
| Do | Apr. 15, 1903 | 15 | 85 | 5,027.63 |
| Do | Apr. 15, 1903 | 15 | 85 | 5,027.63 |

taken out prior to the enactment of the 1918 Revenue Act and that the premiums on the policies had been paid out of community funds.

The petitioners contend that the decision in the *Newman* case, *supra*, is based upon decisions of the courts of Louisiana and Texas, and, therefore, is not applicable as the decisions of such states have not been followed in Washington, and cites numerous authorities.[2] The community property law of Washington, applicable to this issue, is similar to the community property law of Louisiana, applicable to a similar issue in the *Newman* case (*Warburton* v. *White*, 176 U. S. 484; *Poe* v. *Seaborn*, 282 U. S. 101; and *Bender* v. *Pfaff*, 282 U. S. 127), and does not justify a different conclusion. Nor do the California decisions cited by the petitioners[3] justify a different conclusion. Notwithstanding anything to the contrary in the *Carroll* case, *supra*, which was not reviewed by the courts, we adhere to our decision in the *Newman* case, *supra*, as affirmed by the Circuit Court of Appeals of the Fifth Circuit, certiorari having been denied by the Supreme Court.

The action of respondent in including the full value of all the policies in the gross estate of decedent must be approved.[4]

## II.

The next question for consideration is whether the respondent erred in disallowing a deduction of $48,225, claimed to have been identified as moneys received by the decedent, Julius C. Lang, from his brother's estate within five years prior to decedent's death.

*Findings of Fact.*—Henry Lang, of Portland, decedent's brother, died January 1, 1929. During 1929 the decedent received property from the estate of his brother, including various amounts in cash aggregating $96,450. Of this amount the decedent turned over to the National Grocery Co. at various times amounts aggregating $64,000, receiving in return promissory notes of that company payable on demand. All of such notes were paid and the proceeds thereof were used for the purchase of securities.

The decedent and his widow had an agreement to the effect that whatever he received was to be regarded as community property. The petitioners, in conformity with such agreement, deducted on their Federal estate tax return only one-half of an amount of $330,-626.05, which included listed securities and "Monies" in the amount

---

[2] *Shields* v. *Barton*, 60 Fed. (2d) 351; *Stewart* v. *Bank of Endicott*, 82 Wash. 106; *Marston* v. *Rue*, 92 Wash. 129; *Parker* v. *Parker*, 121 Wash. 24; *Schramm* v. *Steele*, 97 Wash. 309; *Re Brown's Estate*, 124 Wash. 273; and *Estate of Louisa Morris Carroll*, 29 B. T. A. 11.

[3] *Blethen* v. *Pacific Mutual Life Insurance Co.*, 243 Pac. (Cal.) 431; *Modern Woodmen of America* v. *Gray*, 299 Pac. (Cal.) 754; *New York Life Insurance Co.* v. *Bank of Italy*, 214 Pac. (Cal.) 61.

[4] See also *Lang* v. *Commissioner*, 289 U. S. 109; *Levy's Estate* v. *Commissioner*, 65 Fed. (2d) 482.

of $96,450 claimed to be property received from the estate of decedent's brother and previously taxed within five years of the death of decedent, one-half of the latter amount being $48,225. The respondent determined that the value of securities listed by the executors as property previously taxed was $242,830.64 and allowed one-half thereof, or $121,415.32, as a deduction, but disallowed $48,225, being one-half of the cash also deducted by the executors.

*Opinion.*—The respondent disallowed the deduction of one-half of the item of $96,450, or $48,225 on the ground that such property, or any property received in exchange therefor, had not been identified as a part of decedent's estate as required under section 303 (a) (2), 1926 Act. The values of the securities as adjusted by the respondent are not in question here. Such property received by decedent became community property by agreement and the executors claim a deduction of only one-half of the value thereof. The only question now presented is whether the $48,225 is deductible from the gross estate of the decedent, Julius C. Lang.

No part of the estate of this decedent has been "identified as having been acquired in exchange for" the $96,450 received from his brother's estate. In schedule C of the petitioner's return for Federal estate tax, certain demand notes of the National Grocery Co. are listed, but none of these has been identified as given to decedent in exchange for any part of the funds received from his brother's estate. The notes received for the $64,000 of the $96,450 which was deposited with such company were paid by the company and securities were purchased with the proceeds. The securities so purchased have not been identified.

Since the evidence fails to identify any property included in the estate of the decedent as having been received in exchange for the moneys in the aggregate amount of $96,450, or any part thereof, received by decedent from his brother's estate within five years prior to his death, the action of the respondent in disallowing a deduction for one-half thereof must be approved.

*Willard G. Rolfe, Executor,* 16 B. T. A. 519; *Frances Brawner, Executrix,* 15 B. T. A. 1122; and *Arthur W. Bingham, Executor,* 15 B. T. A. 1001; relied upon by petitioner, are distinguishable upon the facts, since the amounts in question in those cases were satisfactorily identified.

### III.

Error on the part of the respondent in reducing the deduction for funeral expenses from $7,941.45 to $3,970.73 was assigned.

*Findings of Fact.*—In the Federal estate tax return, the petitioners deducted the amount of $7,941.45 in full, representing funeral expenses, the work of the sexton on the grave, services for conducting

the funeral services, furnishing of music and funeral acknowledgment cards, and the crypt in Hills of Eternity Cemetery. The respondent allowed only one-half of such amount, or $3,970.03, as a deduction in his determination of the estate subject to tax.

*Opinion.*—The character of these expenses or their classification as funeral expenses within the meaning of section 303 (a) (1), 1926 Act is not in dispute. The respondent contends only that such expenses constituted a primary liability against the whole community and that only one-half should be deducted in determining the net estate subject to tax.

A similar question, involving a Texas estate, was decided adversely to the contention of the respondent here in *Mrs. Niels (Mellie) Esperson, Executrix,* 11 B. T. A. 1283; affirmed in *Esperson* v. *Commissioner,* 49 Fed. (2d) 259; certiorari denied, 284 U. S. 658, wherein it was held that the funeral expense of a deceased husband, in its entirety, is deductible from the gross estate of such decedent, which gross estate consisted of one-half of the community property. Upon the authority of that case, we hold that the entire funeral expenses in the amount of $7,941.45 is deductible from the gross estate of decedent in determining the net estate subject to taxation.[5]

## IV.

It is alleged that the respondent erred in reducing the allowance for general debts of the decedent from $739,984.88 to $365,262.29.

*Findings of Fact.*—In the Federal estate tax return, the executors listed debts of the decedent consisting of items numbered 1 to 63, inclusive, in the total amount of $739,984.88. The respondent allowed in full item No. 18 in the amount of $20,646.55, representing Federal income tax; he disallowed items 3, 7, and 10, representing three notes dated January 3, 1928, each in the amount of $10,000 payable to Richard E. Lang, Howard M. Lang, and Dorothy Lang, respectively, and interest in the amount of $106.86; and he allowed a community half of the remainder of the items, making a total of $365,262.29.

Items 1 and 2 in such schedule, in the amounts of $25,000 and $30,000, together with interest thereon in the amount of $210.83, represent notes given by the decedent to the First Seattle Dexter Horton National Bank, both dated October 28, 1929, to purchase additional securities as community property.

As to item 3, prior to January 1, 1928, Richard E. Lang, the son of decedent, was advised that his father had made him a "gift" of

---

[5] See also *Stanton* v. *Everett Trust & Savings Bank,* 259 Pac. (Wash.) 10; *Redelsheimer* v. *Zepin,* 177 Pac. (Wash.) 736; *Butterworth* v. *Bredemeyer,* 133 Pac. (Wash.) 1061; *Corporate Loan & Security Co.* v. *Flindell,* 213 Pac. (Wash.) 450; sec. 1541, Rem. Comp. Stat. (Wash.); *Succession of Pizzate,* 75 So. (La.) 498; and *Succession of Solis,* 119 So. (La.) 768.

$10,000. In January 1928, while absent from Seattle, Richard E. Lang was advised by letter that a note in his favor in the amount of $10,000 executed by decedent had been placed in a safe-deposit box to which he had access. The first time he saw the note was in December 1928, having been away from Seattle in the meantime with the exception of two days. The notes, listed as items 7 and 10, each in the amount of $10,000, payable to Howard M. Lang and Dorothy Lang, respectively, were never actually delivered to either of them, although they had been informed that each had been made a "gift" of $10,000. It had been the practice of the decedent to make gifts to his children in substantial amounts.

The following are amounts borrowed by decedent from his children, together with accrued interest:

| Item No. | Name of child | | Amount |
|---|---|---|---|
| 4 | Richard E. Lang | Note dated 1/2/25 | $51,075.00 |
| 5 | ____do | Note dated 1/2/29 | 36,580.00 |
| 14 | ____do | Open account | 1,375.00 |
| | ____do | Interest | 5,729.09 |
| 6 | Howard M. Lang | Note dated 1/2/25 | 48,390.00 |
| 8 | ____do | Note dated 1/2/29 | 29,820.00 |
| | ____do | Interest | 5,174.98 |
| 9 | Dorothy Lang | Note dated 1/2/25 | 51,635.00 |
| 11 | ____do | Note dated 1/2/29 | 30,960.00 |
| 15 | ____do | Open account | 310.00 |
| | ____do | Interest | 5,432.24 |

Items 11½ and 12, in the amounts of $99,909.69 and $509.82, represent money and interest due Logan & Bryan on the purchase of securities by decedent on margin account. Item 13, in the amount of $263,621.34, represents moneys advanced by Lang & Co. to decedent for the purchase of securities.

Item 16, in the amount of $500, represents a subscription made by decedent to the Seattle Talmud Torah Building Fund for the erection of a building in Seattle.

Items 17 and 18, in the amounts of $1,041.89 and $20,646.55, represent amounts paid for additional income tax for 1921 and income tax for 1929, respectively, accrued on decedent's separate personal returns, the decedent and his wife having filed separate returns.

Items 19 to 63, inclusive, in the aggregate amount of $2,063.45 represent household, family, and doctor bills.

*Opinion.*—Item 17 in the amount of $1,041.89 representing additional income taxes accrued on decedent's separate income tax return for 1927 is deductible in full.[6] This is similar to the item of $20,646.75 which respondent determined was deductible.

---

[6] *Estate of Laura Wilson Kirkwood,* 23 B. T. A. 955, 968, and cases cited.

The respondent disallowed items numbered 3, 7, and 10, each in the amount of $10,000, representing promissory notes of decedent payable to his three children, respectively, and also accrued interest thereon in the amount of $106.86, on the ground that such items do not constitute obligations on the decedent's part based on a valuable consideration in money or money's worth under section 303 (a) (1), *supra*. The three notes to his children, together with the interest thereon, to be deductible under section 303 (a) (1), *supra*, must come clearly within the provisions of the statute and therefore must constitute claims against the estate incurred or contracted "for an adequate and full consideration in money or money's worth." [7] It is immaterial therefore that such claims were allowed by the Superior Court in Probate of the State of Washington as claims against the decedent and whether or not under the laws of the State of Washington (secs. 3415 and 3416, Rem. Comp. Stat.) the natural duty of a father to equalize gifts to his children, together with the legal implication arising from the execution and delivery of such notes, constitutes sufficient consideration so as to create a binding obligation to pay recoverable at law. The notes in question herein were not given for a consideration in "money or money's worth" within the meaning of the applicable provisions of the Federal Revenue Act.[8]

The language of section 303 (a) (1), *supra*, is unambiguous and leaves no room for doubt as to its meaning. The principle, as stated in *Gould* v. *Gould*, 245 U. S. 151, and *United States* v. *Merriam*, 263 U. S. 179, cited by petitioners, that in case of doubt taxing statutes should be construed most strongly against the Government and in favor of the taxpayer, is therefore not applicable here.

*Atkins* v. *Commissioner*, 30 Fed. (2d) 761, and *Robinson* v. *Philips*, 41 Fed. (2d) 71, cited by petitioners, in which similar claims were held to be deductible as claims against the decedent, are distinguishable as such deductions were governed by section 403 (a) (1), Revenue Act of 1921, which did not contain the phrase "for an adequate and full consideration in money or money's worth."

Items numbered 3, 7, and 10, aggregating $30,106.86, are therefore not deductible as claims against the estate within the meaning of section 303 (a) (1), *supra*. The action of respondent in this respect is approved.

As to the items numbered 1 to 16, inclusive, excepting items 3, 7, and 10, heretofore disposed of, the question to be determined is

---

[7] It is stated in *Henry Adams Ashford et al., Executors*, 30 B. T. A. 1306:

"The allowance of deductions is a matter of legislative grace; *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Helvering* v. *Independent Life Ins. Co.*, 292 U. S. 371, and a claim for deductions must come clearly within the conditions prescribed."

[8] *James Turner et al., Executors*, 31 B. T. A. 446; *Henry Adams Ashforth et al., Executors, supra; Central Union Trust Co. of New York et al., Executors*, 24 B. T. A. 296. Cf. *United States* v. *Mitchell et al., Executors*, 74 Fed. (2d) 571.

whether they are deductible in whole as the separate debts of decedent or pro rata as community debts.

The petitioners concede that these debts are community obligations, but they contend that all of those which arose out of contract created by the decedent, as manager of the marital community, are at the same time the separate obligations of the decedent, and as such are deductible in their entirety.

Section 1342 of Remingtons Compiled Statutes of Washington provides in part as follows:

Upon the death of either husband or wife, one-half of the community property shall go to the survivor, *subject to the community debts*, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, *subject also to the community debts*. * * * [Emphasis supplied.]

In *First National Bank of Ritzville* v. *Cunningham*, 130 Pac. (Wash.) 1148, there was involved the establishment, as a claim against the estate of a deceased wife, of a judgment obtained in an action against the husband alone upon a community indebtedness evidenced by two promissory notes signed by the husband only. The Supreme Court of Washington therein stated:

* * * All that was sought in that first action was to obtain a judgment against the husband, which judgment is, not only presumptively, but admittedly, a claim against the community estate. As such it is properly enforceable against the community estate, and the judgment so holding is affirmed.

Since items 1 to 16, exclusive of items 3, 7, and 10, are concededly community debts incurred prior to the dissolution of the community and since under the laws of Washington the share of the decedent and the share of the surviving spouse are each subject to one-half thereof, the action of respondent in allowing only one-half thereof as a deduction from the gross estate of decedent is approved.

We have not overlooked the order of the Supreme Court of Washington under date of November 24, 1930, allowing and establishing these debts "as the indebtedness of the decedent owing at the time of his death", approving the payment thereof, and finding that the executors were entitled to allowance therefor in the settlement of their accounts. On brief, petitioners claim that the effect of such allowance and order is to decrease the decedent's estate by the amount of such claims and to relieve the widow's share of one-half thereof. However, there is no evidence in the record to support such claim. Even if these claims are the separate debts of the decedent, they are also community debts.

*Redelsheimer* v. *Zepin*, 177 Pac. (Wash.) 736, cited by petitioners, does not support the contention of the petitioners that community debts created by the husband are separate liabilities of the husband and as such deductible only from his share of the community estate as the court's decision that these debts were deductible in whole .

from the decedent's share of the community estate was based upon the provisions in his will to that effect. The will of the decedent in that case evidenced an intention to free the share of the wife in the community estate from its share of the community debts.

As to items 19 to 63, inclusive, consisting of personal and household expenses in the aggregate amount of $2,063.45, the petitioners, on brief, waive their contention that they should be deducted in full from decedent's gross estate. The respondent's action in treating these items as community debts and in deducting one-half thereof in computing the net estate subject to taxation, is approved.

## V.

The last question to be considered is whether attorney fees in the amount of $2,500 and expenses of $388.35 incurred in the settlement and adjustment of Federal and state estate taxes due from the estate of decedent should be allowed as deductions.

*Findings of Fact.*—In addition to the amount of $7,500, representing attorney fees shown in the Federal estate tax return, and allowed by the respondent in the amount of $3,500 on a community basis, the petitioners, as executors, have become indebted in the amounts of $2,500 and $388.35, respectively, for attorney fees and expenses in connection with the settlement and adjustment of the tax liability of the Federal and state estate taxes.

*Opinion.*—The respondent on brief concedes that one-half of these additional attorney fees and expenses is allowable as a deduction in determining the net estate subject to estate tax. The allowance as a deduction of only half of the attorney fees of $7,500 is not challenged by the petitioners because under the system prevailing in Washington the entire community estate is subject to administration upon the death of a member of the community, it being conceded that, as these charges related to community administration, they should be treated as community debts. The petitioners contend that the additional fees and expenses totaling $2,888.35 should be allowed in full upon the ground that they arose wholly in connection with determining the estate tax liability of the decedent. These fees and expenses were, as heretofore pointed out, incurred by the executors in the course of the administration and settlement of the whole of the community estate. Hence they are charges against the community estate. There is no basis in the record for sustaining petitioner's contention. They are similar to the fees of $7,500. We therefore hold that one-half only of such fees and charges are deductible.

*Decision will be entered under Rule 50.*