ESTATE OF F. A. GRAY, BY THE FIRST NATIONAL BANK OF KANSAS CITY, AND WILLIAM B. DICKINSON, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101379.   Promulgated May 21, 1941.

*M. B. Dickinson, Esq.*, for the petitioners.

*A. R. Shannon, Esq.*, for the respondent.

### OPINION.

MELLOTT: The Commissioner determined a deficiency in estate tax in the amount of $17,914.41. In the petition it is alleged that there has been an overpayment of tax. At the hearing the parties filed a stipulation in which respondent concedes that certain deductions, aggregating several thousand dollars, which were not included in the original estate tax return should be allowed. On the basis of the stipulation respondent concedes that there has been an overpayment of tax in the amount of $3,956.02.

There is no substantial dispute between the parties as to the facts. All of them—except the fair market value of the real estate on April 20, 1931, which we find from the evidence was $125,000—were admitted in the pleadings or at the hearing or are contained in exhibits, received in evidence without objection. We find the facts to be as admitted or shown in the exhibits, but set out herein only those necessary for an understanding of the questions to be decided.

The decedent, F. A. Gray, was born January 1, 1887, and died November 19, 1935. He was a resident of Kansas City, Missouri, at the time of his death and his estate is being administered by the above named executors under the jurisdiction of the Probate Court of Jackson County, Missouri. An estate tax return was duly filed in the office of the collector of internal revenue for the sixth district of Missouri. Therein the real estate, which is the subject of controversy in this proceeding—lot 87, block 7, McGee's Addition to Kansas City, Missouri, known as 1321–1323 Main Street—was reported and included in gross estate at a fair market value of $30,000. This value was accepted by the Commissioner, is supported by the testimony of a witness called by the petitioner, and is not in dispute.

In schedule J–1 of the return, under the heading of "Mortgages", a deduction from gross estate in the amount of $206,666.67 was claimed, with the following explanation:

| Item No. | Mortgages | Unpaid amount at date of decedent's death | Interest accrued to date of death |
|---|---|---|---|
| 1. | All of Lot 87, Block 7, McGee's Addition in Kansas City, Jackson County, Missouri, subject to an interest of $200,000.00 as conveyed by deed dated April 20, 1931, recorded in Book B 3010 at page 133 and following, in the office of the Recorder of Deeds of Jackson County at Kansas City, Missouri_____ | 200, 000. 00 | |
| | Under said deed of trust agreement, the deceased, F. A. Gray, agreed to repurchase from Martin B. Dickinson and/or The First National Bank, Trustees, for $200,000.00, an interest in the above described property and upon petition of said trustees, the Probate Court on December 26, 1935, ordered the executors to pay this sum which was a charge against said real estate, together with rent on said interest at the rate of $10,000.00 per year until paid. $150,000.00 of this amount has been paid and disbursed, and rent amounting to $4,166.67 and further rent aggregating $2,500.00 is expected to accrue, making a total rent of_____ | | 6, 666. 67 |
| | Totals_____ | $200, 000. 00 | $6, 666. 67 |
| | Grand Total _____ | | $206, 666. 67 |

In the petition it is claimed that deduction under schedule J–1 should be allowed in the amount of $209,868.06. Inasmuch as the only witness who testified upon the subject placed the value of the real estate at $125,000 on April 20, 1931, petitioners upon brief concede that this is the maximum amount which may be allowed as a deduction.

On April 20, 1931, the decedent executed a trust agreement naming

Martin B. Dickinson trustee, and by deed dated the same day conveyed to the trustee "an interest to the extent and amount of Two Hundred Thousand Dollars" in the real estate above described, to be held "subject to the reservations by the party of the first part [decedent] and with the limitations contained in the trust agreement * * *." The deed recited that the trustee was authorized and agreed "to reconvey the above described property to the party of the first part upon the payment to him of Two Hundred Thousand ($200,000) Dollars by the party of the first part, or upon the deposit with the party of the second part of securities acceptable to him of the value of Two Hundred Thousand ($200,000) Dollars * * *." The deed also provided that party of the first part should pay to party of the second part "as rent on said property Ten Thousand ($10,000) Dollars per year * * * and party of the first part shall manage, rent and lease said property and receive all rents and income therefrom as long as said payments shall be promptly made * * *." In the event of partial payment by the decedent on account of the $200,000 provided for in the deed the annual rent was to be reduced *pro tanto*.

The trust agreement contained a provision obligating the settlor "on or before the date of his death to repurchase from the Trustee for the sum of Two Hundred Thousand ($200,000) Dollars * * * the above described interest in said real estate * * *." It also contained a provision requiring the settlor to pay $25,000 to be applied upon the agreed repurchase price within one year after the death of certain of the named beneficiaries in the event they, or any of them, should predecease the settlor. The trust, according to its terms, was to be regarded as consisting of eight equal parts of $25,000 each. Since none of the beneficiaries died prior to the death of decedent, none of the $25,000 payments could be required and none had been made. The decedent had made no payments upon the "repurchase" of the real estate and after his death, on December 26, 1935, the Probate Court of Jackson County, Missouri, directed the executors to pay over to the trustees the sum of $200,000 in cash, "plus rent at the rate of Ten Thousand ($10,000) Dollars per year for the period from November 1, 1935, to the date such payment is actually made, in full payment of all obligations of the estate under said trust agreement and deed * * *." Pursuant to this order the executors paid to the trustees $100,000 on December 31, 1935, $50,000 on May 27, 1936, $50,000 on June 29, 1938, $4,166.67 on May 4, 1936, and $5,701.39 on June 29, 1938, a total of $209,868.06.

While petitioners originally contended that they were entitled to deduct from gross estate $209,868.06 on the theory that it was an "unpaid mortgage upon, or an indebtedness in respect to property" within the purview of section 303 (a) (1) of the Revenue Act of

548

1926 [1] and represented a claim, mortgage, or indebtedness "incurred or contracted bona fide and for an adequate and full consideration in money or money's worth", they now urge only that they be allowed $125,000, which, they admit, is the maximum amount that can be said to represent a liability contracted for an adequate and full consideration in money or money's worth.

Petitioners contend that the decedent divested himself of a portion of his interest in the real estate and on the same date, for a valid consideration, agreed to repurchase the same interest. Recognizing that the transaction fits into no well established category, they say that, "in general, it is similar to a mortgage." This seems to have been the theory under which the deduction was claimed in the return. Petitioners do not seriously urge upon brief that there was any conveyance of property to secure the performance of an obligation, the conveyance to be void on the due performance thereof, or that there was any real pledge of property as security for a debt. It is obvious that there was no mortgage. But was there an obligation which may be classified as a claim or indebtedness incurred or contracted bona fide and for an adequate and full consideration in money or money's worth?

The phrase "adequate and full consideration in money or money's worth" is not ambiguous. In *Latty* v. *Commissioner*, 62 Fed. (2d) 952, the court construed it "to evidence an intent upon the part of Congress to permit the deduction of claims only to the extent that such claims were contracted for a consideration which at the time either augmented the estate of the decedent, granted to him some right or privilege he did not possess before, or operated to discharge a then existing claim, as for breach of contract or personal injury." This language was quoted with approval in *Glaser* v. *Commissioner*, 69 Fed. (2d) 254, and has recently been followed by this Board. See e. g., *Estate of Louis D. Markwell*, 40 B. T. A. 65, 70; affd., 112 Fed. (2d) 253; *Bennet B. Bristol*, 42 B. T. A. 263 (on appeal C. C. A., 1st Cir.). In *Taft* v. *Commissioner*, 304 U. S. 351, the Supreme Court discussed the requirement of consideration for deductible claims, holding that not all valid and enforceable claims against an estate are deductible. It pointed out that the change in the act from "fair consideration" to "adequate and full consideration" indicated that there was an evident intent to narrow the class of deductible claims. The effect of this decision was to overturn the view which several Circuit Courts and the Board had

[1] SEC. 303. For the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—
(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to property, * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth. * * *

taken that an agreement to make a contribution to a charitable corporation in consideration of the subscriptions of others was a claim "incurred * * * for an adequate and full consideration." It will be noted that the Court refused to give the words any strained construction in the cited case, even though it was dealing with a charitable contribution. We should be equally careful in applying the statute in the instant proceeding; for "Deductions are a matter of legislative grace, and one seeking a deduction must show that he comes clearly within the statute allowing it." *Empire Trust Co.* v. *Commissioner*, 94 Fed. (2d) 307.

It seems to be clear that if the rule enunciated in *Latty* v. *Commissioner*, *supra*, be correct—and we do not intimate that it is not—the claim which this decedent's trustee had against his estate had not been contracted for a consideration which, at the time, either augmented his estate or granted to him any right or privilege which he did not possess before. On the contrary such effect as it had—indeed the effect which petitioners insist it had—was to diminish the estate of the decedent or to take away from him a right which he possessed before. Nor can it be said to have operated to discharge a then existing claim against his estate. If the reality of the transaction is kept in mind, the agreement, at most, was that there should be taken out of decedent's estate $200,000 to be the corpus of a trust which he had created for relatives of his wife and himself. As petitioners state upon brief "he obviously desired all the beneficiaries to have a fixed and regular income of 5% per annum" upon $200,000. No doubt this was a laudable ambition and, as petitioners point out, had he seen fit to give the beneficiaries, or a trust created for their benefit, the sum of $200,000 during his lifetime, his estate would have been diminished to that extent and no such controversy as that now before us would have arisen. But he did not choose to do so. What he actually did was to make a voluntary promise, without consideration, to create a trust estate in the future to the extent of $200,000 and in the meantime to pay over to the trustee 5 percent upon that amount or $10,000 per annum. If any interest in the real estate passed from him by the deed, which is doubtful, it amounted to no more than a pledge that his promise to give the trust a corpus of $200,000 would be fulfilled. At no time did any actual consideration in money or money's worth pass from the trustee to the decedent. When his executors made the payments to the trustee they were carrying out his promise; but in our opinion they were not paying a claim or indebtedness contracted "for an adequate and full consideration in money or money's worth."

Upon brief petitioners cite *Charles Steele*, 38 B. T. A. 589, which, though it involved a question of gift tax liability, they contend is somewhat analogous. In the cited case the petitioner, possessed of

a fortune in excess of $10,000,000, made a valid, complete and absolute gift to his wife, in 1917, of $1,000,000. Thereafter she made a loan to him of the same amount, accepting his note, secured by high grade securities. The note was paid off subsequent to the enactment of the statute taxing gifts and the issue was whether the amount paid to the wife was a gift or payment of petitioner's obligation. The question was primarily one of fact and the issue was resolved in favor of the taxpayer. The cited case furnishes but slight aid in determining the issue before us.

One of the purposes of section 303 (a) (1), *supra*, if not its main purpose, was "to prevent deductions, under the guise of claims, of what were in reality gifts or testamentary distributions." *Carney* v. *Benz*, 90 Fed. (2d) 747. Cf. *Phillips* v. *Gnichtel*, 27 Fed. (2d) 662. The deduction in issue in the instant proceeding falls within this category. It is unimportant that the decedent may have had no intention to diminish his estate by making the anticipatory arrangement disclosed by the exhibits. Inasmuch as the claim, in our opinion, was not incurred or contracted "for an adequate and full consideration in money or money's worth", it must be and is, held that the Commissioner committed no error in disallowing the claimed deduction.

Petitioners' alternative contention is that there should be excluded from decedent's gross estate the fair market value—$30,000—of the real estate at the time of his death. Admitting that the decedent held the legal title to the property at the time of his death, they contend that he "had no substantial beneficial interest therein, being obligated to pay therefor $200,000 when the value thereof at that time was only $30,000." This contention can not be sustained.

It is clear that decedent had an interest in real property which must be included in his gross estate under section 302 (a) of the Revenue Act of 1926 as amended by section 404 of the Revenue Act of 1934.[2] Apparently petitioners admit as much, but contend that the value of such interest should not be included in gross estate because decedent or his estate would be required to pay another and larger obligation before the full use of the property could be enjoyed.

In *Henry Adams Ashforth et al., Executors*, 30 B. T. A. 1306 (affd. July 19, 1937, C. C. A., 2d Cir., without opinion) a somewhat similar state of facts was before this Board. The decedent had executed and delivered to her husband, without monetary consideration, a mortgage for $700,000 on real estate which, at the date of her death, had a fair market value of $766,000. It was found that

---

[2] Sᴇᴄ. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

(a) To the extent of the interest therein of the decedent at the time of his death; * * *

the mortgage did not meet the statutory condition of having been contracted "for an adequate and full consideration in money or money's worth" and therefore was not deductible. The inclusion of the full value of the property in the gross estate was nevertheless sustained. On the authority of the cited case and for the reasons therein set out, we hold that the Commissioner correctly included the fair market value of the property in decedent's gross estate. Cf. *City Bank Farmer's Trust Co.* v. *Bowers*, 68 Fed. (2d) 909; certiorari denied, 292 U. S. 644.

In accordance with the stipulation of the parties,

> *Decision will be entered that there is an overpayment of tax in the amount of $3,956.02.*