Estate of Albert Friedman, Late of Boston, Massachusetts, Lee M. Friedman, Executor v. Commissioner.
Estate of Friedman v. Commissioner
Docket No. 571.
United States Tax Court
1944 Tax Ct. Memo LEXIS 349; 3 T.C.M. (CCH) 180; T.C.M. (RIA) 44072; February 28, 1944
*349 Lee M. Friedman and Paul D. Turner, Esq., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of a deficiency in estate tax in the sum of $822.62. There is in issue the propriety of two deductions as claims against the estate. The question is whether payments made by the executor were for obligations contracted bona fide and for an adequate and full consideration in money or money's worth within the meaning of section 812(b) of the Internal Revenue Code. Findings of Fact Petitioner is the executor of the Estate of Albert Friedman, who died April 9, 1940, at the age of 65 years, a resident of Boston, Massachusetts. The estate is being administered in the Probate Court of Suffolk County, Massachusetts. Among the deductions from the gross estate claimed in the estate tax return were items of $5,000, described "Lucinda I. Alley - in settlement of claim against the estate," and $500, "Eda F. Hecht." Decedent was an only brother of several sisters, including Eda F. Hecht. Eda was the youngest sister and was married and had a family. In 1930 she and her husband *350 lost their money; her husband's business was liquidated and they had practically no income. Decedent had not been in the habit of helping his sister financially. At the time of this financial misfortune he and his sisters, together with a sister of Eda's husband, made an arrangement by which each of them agreed to contribute a certain sum of money for the support of Eda and her family. The money was to be paid by each of them on an annual, semiannual or quarterly basis. Decedent was the agent for collecting and disbursing such funds. His undertaking was to pay $500 a year. In March of the year of decedent's death he made a memorandum in his own handwriting to the effect that his "contribution" to Eda's support was usually paid in the fall of each calendar year and that if he died in March or later a "proportionate part" of the annual contribution was a just bill against his estate. The executor of the estate made a payment of $500 for Eda. No part of this payment or of any obligation it discharged was supported by an adequate and full consideration in money or money's worth. Decedent had been a bachelor and lived with a sister in Boston. For some years prior to his death he had *351 been in ill health and retired from business. After decedent's death a suit was filed against his estate in the sum of $100,000 by Lucinda I. Alley. She first entered an appearance on the "return date of the will," but later withdrew it. Suit was filed by her against the estate on November 13, 1940, in which she claimed that decedent had agreed to marry her but never fulfilled the promise, and there was an agreement between decedent and herself whereby she was to give him her companionship, time, and attention, and he was to see that she would be adequately compensated. In the litigation the executor took the position that there was no agreement but that everything had resulted from the friendship and was not on the basis of a business arrangement. Decedent and Miss Alley had been friends and companions for a period of approximately 28 years prior to his death, during which time decedent never made her any substantial gifts. Miss Alley claimed that in 1920 she was considering getting married, but petitioner asked her not to marry. She gave up her position in Lynn, Massachusetts, and moved to Boston with her mother where she lived on her own means. Over the period of years she expended *352 substantial sums in providing food and entertainment for decedent. In addition to entertaining him at her home, she accompanied him to theaters and other places of amusement. He never contributed to her support or paid her bills. Decedent was sociable, but had a very limited circle of acquaintances and friends. He depended upon Miss Alley's company. Decedent never mentioned any agreement with Miss Alley during his lifetime to his attorney who drew his will and was named executor of his estate. Decedent was a very methodical man who tried to be fair with everybody and under ordinary circumstances would never let debts or obligations go unpaid. He was not a man of liberal tendencies. When he was in the hospital during his last illness and during the time when he was in the process of drawing his will decedent gave Miss Alley a check for $1,000 which she did not cash. The executor paid Miss Alley $5,000 and received a general release from her. No part of this payment or of any obligation it discharged was supported by an adequate and full consideration in money or money's worth. The above payments of $500 and $5,000 have been allowed by the Probate Court of Suffolk County as credits *353 in the executor's account filed therein. Opinion Even if decedent had owed a legal obligation to support his sister, that would not have created a "full and adequate consideration" [1] for the payment. Commissioner v. Greene (C.C.A., 9th Cir.), 119 Fed. (2d) 383, certiorari denied, 314 U.S. 641. The gift tax statute interpreted in that case uses identical language and it is in pari materia with the estate tax law. Sanford's Estate v. Commissioner, 308 U.S. 39. It hardly seems reasonable that the promise of others to share the burden of that support could furnish the necessary consideration or that any agreement concerning it could rise higher than its genesis. On the contrary - One of the purposes of section 303(a)(1), supra, if not its main purpose, was "to prevent deductions, under the guise of claims, of what were in reality gifts or testamentary distributions." Carney v. Benz, 90 Fed. (2d) 747. [Estate of F. A. Gray, 44 B.T.A. 545, 550].
We do not view such a consequence *354 as inconsistent with the numerous cases holding that promises to contribute to recognized charities, if supported by similar promises from others, may be deductible. Jeptha H. Wade, Jr., et al., Execs., 21 B.T.A. 339; Estate of Alfred S. Gump, 42 B.T.A. 197, affirmed (C.C.A., 9th Cir.), 124 Fed. (2d) 540, certiorari denied, 316 U.S. 697. A direct bequest to such a charity is specifically authorized as a deduction. Internal Revenue Code, section 812(d). And it is not difficult to place an appropriately articulated promise to do so in the same category. Cf. Revenue Act of 1942, section 406. In the entirely different aspect, however, of a promise to make an uncompensated gift, or "contribution," as decedent phrased it, to a member of one's family, the whole purpose of the section would be frustrated if the agreement were converted from a taxable bequest into an untaxable claim merely because other members of the family associate themselves with the decedent in making similar promises. Even though this might have the effect of creating an enforceable cause of action, it *355 does not necessarily furnish the requisite full and adequate consideration. Stella S. Housman, 38 B.T.A. 1007, 1011, affirmed (C.C.A., 2nd Cir.), 105 Fed. (2d) 973, certiorari denied, 309 U.S. 656; see Helvering v. Bullard, 303 U.S. 297. In none of the cases * * * have we been able to discover a holding that a claim based on a promise of gift or contemplated bounty was a claim incurred for money or money's worth within the meaning of the statute, even though under local law the claim might be enforceable. The courts in United States v. Mitchell, supra, [(C.C.A., 7th Cir.), 74 Fed. (2d) 571] and Carney v. Benz, supra, were definitely of the opinion that Congress had in mind, when it enacted the provisions in question, the exclusion of family contracts and similar understandings made as a cloak to cover gifts. [Estate of Hugo Goldsmith, 36 B.T.A. 1201, 1206]. Decedent died at a time when, to quote his own language, only a "proportionate part" of the annual contribution was *356 due which could not exceed approximately $250. Entirely aside from this fact, however, and assuming that such a family arrangement could under appropriate evidence be transformed from the equivalent of a bequest into a deductible claim, the record here is lacking in any support for a finding as to the value of the consideration given. If there was a legal obligation upon decedent to support his sister, no evidence appears from which we can ascertain that a similar obligation did not lie upon the other parties to the arrangement. If, on the other hand, there was no such obligation, the monetary value, if any, of the supporting promises becomes even more imponderable. It is hence impossible to determine that there was "full and adequate consideration in money or money's worth," as the statute requires. Petitioner's failure to sustain the burden in this respect requires disallowance. Markwell's Estate v. Commissioner (C.C.A., 7th Cir.), 112 Fed. (2d) 253, affirming 40 B.T.A. 65. On the second issue, assuming that there were an agreement, however indefinite, providing for compensation to decedent's friend for her services as *357 companion and hostess, there would be little doubt that a reasonable amount claimed and disbursed to discharge such an obligation would be an allowable deduction. Nashville Trust Co., Exec., v. Commissioner (C.C.A., 6th Cir.), 136 Fed. (2d) 148. The record, however, fails to furnish any ground upon which we can justifiably find that petitioner has sustained his burden of proving the existence of such an agreement or that the activities for which compensation was claimed would properly be characterized as "services" from which even an implied contract of compensation might arise. The relationship with decedent upon which the claim rested was apparently of an entirely social nature and one which, in common experience, is pursued without thought of monetary reward. The promise not to marry, if these were one, would not support the deduction. John Nicholas, et al., Execs., 40 B.T.A. 1040, affirmed (C.C.A., 2nd Cir.) sub nom Burdick, et al., v. Commissioner, 117 Fed. (2d) 972, certiorari denied, 314 U.S. 631. Petitioner himself "took the position as executor that whatever *358 was proved was not the basis of a business arrangement"; that it was "a matter of gratuitous friendship without any arrangement or agreement between them." A mutual friend "was frankly puzzled" as to whether or not there was any such thought. "He wouldn't say that there wouldn't be such a thing, and he wouldn't say that there was." The executor candidly recognized that he was in no position to assert the existence of any enforceable claim of his own knowledge and the other party to the arrangement did not testify. No explanation for her absence appears. Even the bill of complaint by which she instituted her legal proceedings was not produced. But it does appear that after the settlement of her claim "the court record shows judgment for the defendant without costs * * *." There is, as a consequence, no state court decree to which petitioner can turn for support. Cf. Nashville Trust Co., Exec., v. Commissioner, supra.
Absent the evidence from which we can draw the conclusion that there was at least an implied contract for compensation, it seems utterly impossible to hold that the controverted deduction is based upon any claim actually enforceable against *359 the estate, much less one founded entirely on adequate and full consideration. Respondent's determination is sustained. Decision will be entered for respondent. Footnotes
1. Internal Revenue Code, section 812(b)(5)↩.