ESTATE OF HERBERT C. TIFFANY, DECEASED, MRS. VIRGINIA TIFFANY AND HERBERT C. TIFFANY, JR., COEXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1828-65.   Filed February 20, 1967.

*Stephen W. Craig*, for the petitioners.
*Sheldon M. Sisson*, for the respondent.

OPINION

TURNER, *Judge:* Respondent determined that the decedent's estate should be increased by $59,014.74 to account for decedent's one-half community obligation for principal and accrued interest totaling $118,029.49 on a promissory note dated December 1, 1949, executed in favor of the decedent and Virginia Tiffany as trustees for their children under a declaration of trust dated July 9, 1942, under the provisions of sections 2036, 2037, 2038, and 2053(a) of the 1954 Code.[2] It is respondent's primary position that no deduction is allowable for the promissory note in question because under section 2053(c)(1)(A) a deduction for a claim against the estate is

---

[2] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    (1) for funeral expenses,

    (2) for administration expenses,

    (3) for claims against the estate, and

    (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

limited to the extent that the liability was "contracted bona fide and for an adequate and full consideration in money or money's worth."[3]

Section 2053 of the 1954 Code provides, in pertinent part, that the value of the taxable estate is determined by deducting from the value of the gross estate, among other things, amounts representing claims against the estate and amounts for unpaid mortgages on or indebtedness in respect of property, where the value of the decedent's interest is included in the value of the gross estate undiminished by such mortgage or indebtedness. The allowance for the deduction is measured by the extent to which such amount is allowable by the laws of the particular jurisdiction under which the estate is being administered. This general treatment is limited to some extent by section 2053(c)(1)(A) which provides that the allowance for a deduction of claims against the estate, unpaid mortgages or any indebtedness, when founded on a promise or agreement, is limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth.[3]

The correlative regulation, section 20.2053, Estate Tax Regs., states that liabilities imposed by law or arising out of torts are deductible and cross references sec. 20.2043-1 for the definition of a liability contracted bona fide and for an adequate and full consideration in money or money's worth.[4] This latter regulation provides that a transfer must have been made in good faith and the price must have been an adequate and full equivalent reducible to a money value in order to constitute a bona fide sale for an adequate and full consideration in money or money's worth.[5] We believe that this regulation is a reasonable implementation of the statute involved.

Petitioners have the burden of showing affirmatively the extent to which the promissory note in question was contracted bona fide and for an adequate and full consideration in money or money's worth. *Edith M. Bensel, et al., Executors*, 36 B.T.A. 246, 254, affd. 100 F. 2d 639. In essence, petitioners contend that the claim under review qualifies as an allowable deduction from the gross estate under section 2053(c)(1)(A) because there was a valid agreement between the trust

---

[3] SEC. 2053(c). LIMITATIONS.—

(1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) AND (b).—

(A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * *

[4] Sec. 20.2053-4 [Estate Tax Regs.], Deduction for claims against the estate; in general. * * * Section 2053(c)(1)(A) provides that the allowance of a deduction for a claim founded upon a promise or agreement is limited to the extent that the liability was contracted bona fide and for an adequate and full consideration in money or money's worth. See § 20.2043-1. Liabilities imposed by law or arising out of torts are deductible.

[5] Sec. 20.2043-1 [Estate Tax Regs.]. Transfers for insufficient consideration. * * * To constitute a bona fide sale for an adequate and full consideration in money or money's worth, the transfer must have been made in good faith, and the price must have been an adequate and full equivalent reducible to a money value. * * *

and the partnership, Tiffany Construction Co., for the lease of the equipment; there was an enforceable obligation of the partnership to the trust for rental and receipts from sales of trust property; and a community obligation of the Tiffanys to the trust in connection with the assumption by A. E. Tiffany of an equivalent partnership liability. We disagree. The formalities surrounding the creation of the promissory note, including the mortgage security given to the trust, and the accrual of interest on the obligation are not determinative of the statutory requirements. We must ascertain the true nature of the overall transaction which gave rise to the note and the pecuniary value of the consideration involved.

The record shows that prior to 1942 Herbert C. and A. E. Tiffany were partners in the Tiffany Construction Co., in Arizona. Herbert C. and Virginia Tiffany owned assets which could be used in the construction business which had an aggregate fair market value of about $24,000. On July 9, 1942, the Tiffanys created a trust with themselves as trustees. On the same date they transferred $24,000 in equipment to the trust and immediately leased the equipment to the partnership. During the next few years the partnership made some cash payments to the trust and accrued but did not pay other amounts to the trust. The parties stipulated that (at some time not shown in the record) an audit by the Internal Revenue Service resulted in the taxation of the payments to the trust to the Tiffanys as grantors, under the so-called Clifford Trust doctrine. Thereafter, the partnership ceased making cash payments to the trust, at least from early in 1948 to late in 1961, but bookkeeping entries continued to be made which increased the liability shown on the books of the partnership in favor of the trust.

Sometime prior to December 1949, the Tiffanys borrowed at least $12,161.78 in cash from the trust. There is no evidence that they ever sought, as trustees of the trust, to collect on the outstanding obligation from the partnership.

In December 1949, they assumed the obligation to the trust in the amount of $46,268.71 shown on the partnership books and apparently added the amount of $12,161.78 previously borrowed and gave the trust a note in the amount of $58,430.49. They then executed a mortgage to secure the note but the mortgage was not recorded until 4 years later.

Nothing was paid in the way of principal or interest on the note for more than 10 years. In late 1960 the Tiffanys as trustees released part of the property held as security and sold the parcel in their individual capacities. Then, as individuals, they assigned the mortgage received on the sale to the trust as additional security. The payments from the 1960 sale were to be paid to the trust but no payments were made until after Tiffany's death.

From these facts the only conclusion we can draw is that the claim subsequently made against the estate of the decedent based on the note was not incurred in a bona fide transaction for an adequate and full consideration in "money or money's worth" as required by section 2053(c)(1)(A). We are mindful that intrafamily contracts and similar understandings, cloaked in the guise of a promissory note, as in the instant case, invite special scrutiny. *Estate of Charles L. Woody*, 36 T.C. 900, 903; see *Willcuts v. Douglas*, 73 F. 2d 130, 132, affd. 296 U.S. 1. To allow deductions for promissory notes without valuable consideration in money or money's worth to those who would be the natural objects of a decedent's bounty would afford an easy means of escaping death duties.

Here, in substance, the initial transfer of the construction equipment to the trust and lease back to the partnership in 1942 was in the nature of an unsuccessful attempt to shift income for the benefit of their children. No consideration of any ascertainable value in money or money's worth was involved with respect to this initial transfer, and no claim is made by the petitioners that there was. Thereafter, the trust lay dormant for more than 10 years with no attempt on the part of the Tiffanys as trustees or fiduciaries to enforce collection from the partnership. However, credits to the trust continued to be made on the partnership's books. Then, in 1949, the Tiffanys attempted to change the character of the initial transfer by giving the promissory note to the trust which represented amounts owed to it by the partnership plus amounts the Tiffanys had borrowed from the trust in their private capacities with the approval of themselves as trustees. The alleged consideration for the assumption of the partnership's debt was that A. E. Tiffany would assume an obligation of the partnership to himself for certain equipment he had leased to the partnership. Nothing in the record shows whether the debt to A. E. Tiffany was bona fide or whether it was for adequate consideration.

It seems clear to us on these facts that the Tiffanys assumed an indebtedness created by mere book entries and gave the trust a promissory note, which included funds previously appropriated to themselves as trustees. This note and the trust remained dormant until it was decided to sell some of the property securing the note. It was only after the Shumway sale in 1960 that the trust received any income. Thus, we have a claim which had its origin in a depletion of the estate in 1942 coupled with a device to shift income which failed followed by a trust dormant for a decade. Unquestionably, the transaction which gave rise to the claim in question was not contracted bona fide and for an adequate and full consideration within the intendment of the statute. *Estate of Julius C. Lang*, 34 B.T.A. 337; *Henry Adams Ashforth, et al., Executors*, 30 B.T.A. 1306.

Petitioners, citing 14 Ariz. Rev. Stat. Ann., ch. 5, sec. 577, contend that the debt owed to the trust was enforceable and collectible under Arizona law, and that the mortgage securing the indebtedness provided more than adequate security. They argue in this connection that the consideration for the assumption by them of the partnership obligation to the trust was the concomitant assumption by A. E. Tiffany of partnership liabilities running to A. E. Tiffany for equipment leased by A. E. Tiffany from the partnership. We disagree with petitioners. It is now well settled that a claim against an estate for Federal estate tax purposes is not deductible merely because it is enforceable under the State laws governing the validity of contracts. *Estate of Hugo Goldsmith*, 36 B.T.A. 1201, 1205; *Carney v. Benz*, 90 F. 2d 747; *United States v. Mitchell*, 74 F. 2d 571. In the *Goldsmith* case we pointed out that we had not been able to discover a holding that "a claim based on a promise of a gift or contemplated bounty was a claim incurred for money or money's worth within the meaning of the statute, even though under local law the claim might be enforceable." We noted that the courts in the *Mitchell* and *Carney* cases were definitely of the opinion that Congress had in mind the exclusion of family contracts and similar understandings made as a cloak to cover gifts. And with respect to the phrase "adequate and full consideration in money or money's worth," we pointed out in *Estate of F. A. Gray*, 44 B.T.A. 545, that the phrase is not ambiguous, referring to the construction of that phrase in *Latty v. Commissioner*, 62 F. 2d 952, where the court construed the term as evidencing an intent on the part of Congress to permit the deduction of claims only to the extent that they were contracted for a consideration which at the time either augmented the estate of the decedent, granted him some right or privilege he did not possess before, or operated to discharge a then existing claim, such as breach of contract or personal injury. As the Supreme Court in *Taft v. Commissioner*, 304 U.S. 351, 356, while tracing the history of section 303(a)(1) of the Revenue Act of 1926, the predecessor of section 2053(c)(1)(A), *supra*, pointed out, it was the evident purpose of Congress, in its successive changes of this provision of the Code, to narrow the class of deductible claims. Therefore, in the instant case, it was incumbent upon petitioners to show not only that there was a claim against the estate recognized by the laws of Arizona, but that such claim was supported by adequate and full consideration in money or money's worth as that term is used in the statute. *Estate of Rosalean B. Ottmann*, 12 T.C. 1118, 1121. It is now well established that the claims referred to by section 2053(c)(1)(A) are those claims against the property of the deceased which are allowed by and enforced under the laws of the administering State and not those claims created by the decedent's "gratuitous assumption of debts attaching to the property of another," notwithstanding that the promise

or claim is legally enforceable under the State laws governing the validity of contracts and wills. *United States* v. *Stapf*, 375 U.S. 118, rehearing denied, reversing and remanding 309 F. 2d 592; *Estate of Emma Earle*, 5 T.C. 991, 1000, affirmed per curiam 157 F. 2d 501, certiorari denied 330 U.S. 822. Assuming *arguendo* that the note was an enforceable claim and was adequately secured by the mortgage in favor of the trust, these factors, standing alone, are not controlling for purposes of deciding the pivotal issue of whether the promissory note was contracted bona fide and met the statutory consideration.

In the instant case we fail to see anything in the original 1942 transfer which would qualify the claim of the trust against the estate as a liability contracted bona fide and for an adequate and full consideration in money or money's worth, thereby constituting a deductible claim against the estate. Nor do we see anything of substance in the events since that time which would change the nature of the liability which the estate now seeks to deduct. We believe that the initial transfer to the trust and later the assumption by the Tiffanys of the obligation of the partnership to the trust was in the nature of a family contract or understanding which cloaked a gift to the Tiffanys' children in the form of a provision in the trust for their care, maintenance, and education. The realistic view of what this was to accomplish, we think, was the application of the trust assets and income accruing thereto toward the discharge of the legal obligation of the Tiffanys under State law to provide support for their dependents.

The allowance for deductions is a matter of legislative grace, and the one seeking a deduction must show that he comes within the statute allowing it. *New Colonial Co.* v. *Helvering*, 292 U.S. 435. Here, the original transfer to the trust and later the assumption of the obligation of the partnership to the trust by the Tiffanys and their transfer of a mortgage to the trust as security for the note does not meet the statutory condition of having been incurred or contracted bona fide and for an adequate and full consideration in money or money's worth. There is no indication of arm's-length dealing throughout this transaction and no indication that the original transfer to the trust or the later assumption of the partnership obligation constitute claims which were contracted for a consideration which augmented the Tiffanys' estate at the time. Nor is there any evidence that the initial transfer and the assumption of the partnership obligation granted the Tiffanys any right or privilege they did not possess before or operate to discharge a then existing claim against them. If anything, these transactions had the effect of diminishing the estate of the decedent and if they operated to discharge anything it was Tiffany's obligation to support his children, an obligation he already had by State law. In fact, the record is silent as to whether any payments were made in accordance with the

terms of the trust for care, maintenance, and education of the Tiffany children or if the trust served any other purpose than as a device to deplete the Tiffany estate and as a convenient purse from which the Tiffanys could withdraw funds as needed. The record shows that after the first 7 years of the life of the trust, or December 1, 1949, the Tiffanys had borrowed an aggregate of $12,161.78 from it. While this amount was covered by the note executed by the Tiffanys in favor of the trust when they assumed the partnership obligation to the trust on that date, there is no indication in the record that any part of this amount or any accrued interest was ever paid from the time the trust was created in 1942 until Tiffany died in 1961. In our opinion not even the most minimal consideration in money or money's worth ever actually passed from the trust to the decedent during the time which elapsed from the creation of the trust in 1942 to Tiffany's demise in 1961. Nothing of money or money's worth ever passed from anyone except from the Tiffanys to the trust and we do not believe that the facts explaining the growth of and accretion to the trust assets over the years alter the result. The burden of proof, as stated above, was on the petitioners. The one person who might have shed some light on the reason for the giving of the promissory note to the trust was Virginia Tiffany. For some reason, not explained in the record, she was not called as a witness by petitioners. *Wichita Terminal Elevator Co.*, 6 T.C. 1158, 1165, affd. 162 F. 2d 513.

Under the circumstances, we conclude that the claim in question does not meet the statutory test under section 2053 (c) (1) (A). Accordingly, we hold for respondent on this issue.

We have found as facts the stipulation of the parties pertaining to the last illness of decedent which relate to the alternative issue under sections 2036 and 2038 of the Code. However, in view of our conclusion hereinabove with respect to the principal issue, we find it unnecessary to discuss the alternative issue.

To allow for concessions of the parties,

*Decision will be entered under Rule 50.*