ESTATE OF HUGO GOLDSMITH, DECEASED, MAX GOLDSMITH, ERICH KEIBEL AND THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82612. Promulgated December 28, 1937.

*Harter F. Wright, Esq.*, for the petitioners.
*Lewis S. Pendleton, Esq.*, for the respondent.

OPINION.

TURNER: The only issue presented is whether the guardian fee and claim paid by the petitioners are deductible from the gross estate of the decedent under section 303 (a) (1) of the Revenue Act of 1926.[1] The respondent rests the disallowance of the deduction on the ground that the claim was not "incurred or contracted * * * for an adequate and full consideration in money or money's worth."

While the reasoning in the cases construing the provisions of the statute referred to above may not be in complete harmony, certain conclusions may be drawn from the decided cases and now regarded as settled. First, a claim against an estate is not deductible merely because it is enforceable. *Latty* v. *Commissioner*, 62 Fed. (2d) 952; *Porter* v. *Commissioner*, 60 Fed. (2d) 673; *Glaser* v. *Commissioner*, 69 Fed. (2d) 254; *Taft* v. *Commissioner*, 92 Fed. (2d) 66. Second, it is not necessary that the consideration should pass to the decedent. *Jeptha H. Wade, Jr., et al., Executors*, 21 B. T. A. 339; *United States* v. *Mitchell*, 74 Fed. (2d) 571; *Carney* v. *Benz*, 90 Fed. (2d) 747; *Commissioner* v. *Bryn Mawr Trust Co.*, 87 Fed. (2d) 607; *Taft* v. *Commissioner, supra*. Third, it is not essential that the transaction on which the claim is based should have been of a business or commercial nature. *Jeptha H. Wade, Jr., et al., Executors, supra; Taft* v. *Commissioner, supra; Commissioner* v. *Bryn Mawr Trust Co., supra; Turner* v. *Commissioner*, 85 Fed. (2d) 919. In each of the cases last cited the claim was based on subscriptions made by the decedent during his lifetime to certain recognized public, educational, charitable, or religious institutions. The subscriptions were made in consideration of similar subscriptions by other individuals and the Board and the courts have uniformly held that the promise of others to make similar contributions supplied the necessary consideration in money or money's worth to bring those claims within the meaning of the statute and to make them deductible from the gross estate. In some of the earlier cases there was some intimation that the statute contemplated the allowance of deductions only in the case of claims based on commercial or business transactions. Arguments to that effect might be based on language appearing in *Latty* v. *Commissioner, supra; Porter* v. *Commissioner, supra; Glaser* v. *Commissioner, supra; United States* v. *Mitchell, supra;* and *Carney* v. *Benz, supra*. In the first three cases cited, however, the deductions

---

[1] SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indetbedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * *.

were disallowed for other reasons, namely, that the promises upon which claims were based were in fact promises to make a gift or a bequest, while in the other two cases the transactions involved were definitely of a business or commercial nature, making it unnecessary to determine the effect of the statute on claims of a different character.

In none of the cases, however, have we been able to discover a holding that a claim based on a promise of gift or contemplated bounty was a claim incurred for money or money's worth within the meaning of the statute, even though under local law the claim might be enforceable. The courts in *United States* v. *Mitchell, supra,* and *Carney* v. *Benz, supra,* were definitely of the opinion that Congress had in mind, when it enacted the provisions in question, the exclusion of family contracts and similar understandings made as a cloak to cover gifts.

It is argued in the instant case that the claim here involved has been considered as to its legal aspects and allowed by the Surrogate's Court; that it was in fact a business transaction even though made between a brother and sister; that the promise made by the decedent to his sister was in the discharge of a legal obligation which rested upon the decedent to support his mother; that it is supported by the mutual promise of the sister to permit the mother to occupy property belonging to sister; and that a claim based upon such a promise is brought within the provisions of the statute relied on and the interpretation of the statute by the Board and the courts. Considering the facts disclosed by the record, however, we are of the opinion that the promise of the decedent was the promise of a bounty. The real nature and character of the transaction is best shown by the statement of the decedent himself, written in his own hand and left among his papers. This statement convinces us that the gift of the property by the decedent to Nettie G. Dreifuss was subject to the right of the mother to occupy the dwelling during her lifetime. Nettie G. Dreifuss herself was the object of decedent's bounty and no consideration passed from her to anyone in respect of the understanding on which the claim herein was based. The decedent not only gave her the property, but also agreed to relieve her during the lifetime of the mother of the burden of maintaining the property and of paying the taxes thereon. From these facts the only conclusion we can draw is that the claim subsequently made against the estate of the decedent was not incurred for adequate and full consideration in money or money's worth, as required by the statute, but that the consideration was in the nature of the love and affection which he held for his sister and his mother. Nothing of money or money's worth passed from any one except from the decedent himself.

In reaching the above conclusion we do not overlook the fact that the stipulation of facts contains a statement to the effect that at some time subsequent to October 1, 1929, a date after that of the

formal conveyance of the property to Nettie G. Dreifuss, the decedent entered into an agreement with her for the benefit of his mother in respect of the occupancy and use of the property. While this statement standing alone might indicate that there were no conditions attached to the conveyance of the property to Nettie G. Dreifuss and that at the time of the agreement with the decedent for the care of their mother, Nettie G. Dreifuss did supply consideration in money or money's worth in the form of the use of property then unconditionally belonging to her, the stipulation does not stand alone and such a conclusion is clearly not in harmony with statements contained in the decedent's memorandum. It may be that the details of the agreement were not worked out until after October 1, 1929, but the decedent's memorandum in our opinion definitely shows that the conveyance was made in the light of the private understanding mentioned.

On the facts in this case, we hold that the claim here involved was not incurred by the decedent for full and adequate consideration in money or money's worth.

*Decision will be entered for the respondent.*