Estate of Charles F. Goodwin, Deceased, Jennie Goodwin, Administratrix, v. Commissioner.
Estate of Charles F. Goodwin v. Commissioner
Docket No. 30540.
United States Tax Court
1951 Tax Ct. Memo LEXIS 7; 10 T.C.M. (CCH) 1244; T.C.M. (RIA) 51376; December 28, 1951
*7 The Commissioner disallowed deduction, from decedent's estate, of claims alleged to be founded on decedent's promise or agreement. The only evidence adduced by petitioner was documentary, being parts of the record of the claims before the Probate Court, including what was certified to be a "partial transcript" of the probate procedure. The evidence is insufficient to prove whether the claim was approved through consent agreement or collusion within Freuler v. Helvering, 291 U.S. 35, or to prove whether the claims were contracted bona fide and for adequate and full consideration in money or money's worth. Held, for lack of proof, that no error by Commissioner is shown in denying deduction. Roger K. Powell, Esq., 1004 Huntington Bank Bldg., Columbus, Ohio, for the petitioner. J. Nelson Anderson, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency of $41,727.22 in estate tax. The issue is whether the respondent erred in disallowing as deductions from the gross estate certain claims paid by the estate in the total amount of $131,652.14. Findings of Fact Petitioner is the administratrix of the estate of Charles F. Goodwin, deceased, who died intestate February 6, 1947, a resident of Columbus, Ohio, and left as heirs his wife, Jennie Goodwin, petitioner herein, and three daughters, Frances G. Gustafson, Ruth G. Richey and Dorothy G. Freed. The estate tax return was filed with the collector for the eleventh district of Ohio. On March 2, 1947, the daughters presented to the estate and the administratrix thereof allowed claims as follows, they being the claims in controversy here: Frances G. Gustafson, $68,742.49; Ruth G. Richey, $31,472.52 and Dorothy G. Freed, $31,437.13, a total of $131,652.14. On August 25, 1947, the administratrix *9 filed with the Probate Court of Franklin County, Ohio, a schedule of debts against the estate, including the claims in question here, accompanied by a motion reading, in pertinent part, as follows: "She further says that among the claims so presented are claims in substantial amount made by the children of the decedent, which claims arise from the alleged borrowing of money by said decedent from said children during his lifetime. She says that she believes that said claims are legitimate and should be paid, but that the amount thereof is so substantial and the circumstances surrounding the inception of such indebtedness are such that she is desirous of having a determination thereof made by this Court, so as to fully determine the rights of said claimants as between the estate and them and to avoid any possible subsequent dispute as to the distributive shares of the respective claimants as heirs of the decedent, as being affected by such claims. "She therefore moves the Court that it assign said schedule of debts for hearing on a day certain in order that notice may be given and the matter may be determined in accordance with the provisions of Section 10,509-119 of the General *10 Code of Ohio relating thereto." On the same day the daughters of decedent filed with the court a waiver of written notice of the hearing upon the schedule of debts. Pursuant to the motion filed on August 25, 1947, the schedule of debts was passed upon by the court on September 11, 1947, and at the hearing affidavits of Frances G. Gustafson and Dorothy G. Freed were submitted along with oral testimony of Ruth G. Richey and the administratrix. The affidavit of Frances G. Gustafson recites, in pertinent part, that in January 1939 she became a partner of her father and mother in the operation of a business under the trade name of Sunray Stove Company; that in August 1941 she sold her partnership interest to her sisters; that while a partner she withdrew a total of $149,531.39 from the partnership, out of which she paid her income taxes and purchased bonds and other securities; that in 1944 The Tax Court of the United States determined that the partnership was invalid for income tax purposes and as a result a deficiency of $147,002.01 was determined against her father, which deficiency was thereafter paid by him "out of funds partially his own and partially borrowed, all of the borrowings *11 being thereafter repaid from his own funds"; that thereafter the "Treasury Department" determined that the partnership formed in 1941 was invalid and that profits thereof distributed to her sisters were taxable to her father; that the additional tax determined against her father was $62,829.53 for 1942 and 1943 and $49,715.35 for 1944, plus interest in the amount of $6,461.69; that in connection with the determination of a deficiency against decedent on account of the partnership with her, the Commissioner computed overassessments against her in the total amount of $68,742.49 for the years 1939, 1940 and 1941, for which she filed claims for refund; that the decedent expressed a desire to borrow the money refundable to her on account of the overassessments and in June and August 1945 requested her to ask for a prompt determination of the matter in order to make the funds available to him and thus avoid the necessity of borrowing money outside of the family; that the decedent paid a large deficiency in July 1945; that the claims for refund were allowed and payments in settlement were received by her in October 1945; that in accordance with her father's request, on October 8, 1945 her *12 checks in the respective amounts of the checks received for refunds were given to her father who used the proceeds "for his own personal uses"; that the decedent made arrangements with her sisters to borrow from them the amount determined to be refundable to the sisters for taxes paid for the years 1942 and 1943; and that there was an oral agreement between her and decedent that the amounts she paid to him were a loan to be used to meet personal necessities and to be repaid at his convenience. The affidavit of Dorothy G. Freed recites, among other things, that the deficiency of $147,002.01 determined against the decedent was paid out of his funds and money borrowed which was subsequently paid out of his funds; that a deficiency of $112,544.88 was determined against the decedent on account of inclusion in his gross income of profits distributable to her and her sister by the partnership for the period during which they were members thereof and at the same time it was determined that she was entitled to a refund of $31,437.13 and to her sister a refund in the amount of $31,472.52; that it would have been necessary for decedent to borrow funds to pay the deficiency and therefore he *13 requested her and her sister Ruth "to permit the amount of the refunds to be offset against the amount of his deficiency, as a loan in this amount to him"; that the decedent "agreed and intended to repay the principal amount of said refunds to this affiant and to her sister Ruth, as soon as repayment was convenient and practicable"; and that it was not at any time after the "offsetting of the refund * * * against his deficiency" possible for the decedent to pay the amount of the refunds except out of the sale of securities held by the decedent. The order made by the Probate Court September 11, 1947 recited that after consideration of the affidavits and testimony and the creditability thereof the court finds that the decedent had borrowed the amounts shown in the schedule of debts from his children without interest, that the claimants were not volunteers but expected repayment of their loans and decedent intended to repay the loans "as soon as such repayment should be convenient and practicable," and ordered, adjudged and decreed that the debts created by the loans were valid and subsisting claims against the estate of the decedent "incurred for an adequate and full consideration *14 in money or money's worth" and that the debts be paid by the administratrix from the assets of the estate. In accordance with the order of the Probate Court the administratrix thereafter paid the claims totaling $131,652.14. The amount of the claims was deducted by the petitioner in computing the net estate of the decedent for estate tax purposes. Respondent determined that the claims did not constitute allowable deductions within the meaning of section 812 (b) (3) of the Internal Revenue Code. The facts above found as to recital of proceedings in the Probate Court are taken from a transcript, certified by the Judge of the Probate Court to be a "partial transcript" of the proceedings in that court; also from a certified copy of the administration docket in that court giving a chronological record of entries in the probate case from February 17, 1947 to June 20, 1949; also from a certified copy of the journal entry of redetermination of inheritance tax, in the probate case, dated January 28, 1948. The "partial transcript" contained only a "schedule of debts"; a motion by the administratrix for hearing on the claims filed by the daughters; waiver of notice *15 by the three daughters; affidavits by two of the daughters; the court's order after hearing, dated September 11, 1947; the first account; and the second and final account. The copy of the administration docket does not show filing of either the journal entry of January 28, 1948, nor an entry of determination of January 8, 1948, recited on the journal entry of January 28, 1948, to have been set aside. Opinion Section 812 (b) (3) and (4), Internal Revenue Code, provides, in part material here, that the value of net estate shall be determined by deducting from the value of the gross estate, claims against the estate as are allowed by the laws of the jurisdiction under which the estate is being administered, and that the deductions shall when founded upon promise or agreement be limited to the extent contracted bona fide and for adequate and full consideration in money or money's worth. The evidence presented in the matter consisted solely of three certified copies of records of the Probate Court of Franklin County, Ohio. No testimony or other evidence was adduced. One of the exhibits was a copy of the "transcript of docket" showing docket entries in the probate *16 case of the decedent, another was a copy of the journal entry of redetermination of inheritance tax by the Probate Court, and the third, the one most vital here, was certified to be a "partial transcript" of proceedings in the probate of decedent's estate. The transcript of docket entries does not show the entry of the journal entry of redetermination of heirship on January 28, 1948, nor an order dated January 8, 1948, referred to in the redetermination, and thus appears to be of questionable value, since being deficient on two items it may be so on others. In the state of the record before us, has the petitioner shown the right to deduction of claims allowed against the estate, founded on promise or agreement contracted bona fide and for adequate and full consideration in money or money's worth? Upon careful examination of the sparse evidence offered, we conclude that petitioner has not so shown. The "partial transcript" of course on its face demonstrates that we are not apprised of all that took place in the Probate Court. Why a full and complete transcript was not adduced is not explained, except, in effect, the suggestion that other parts thereof were not material. We must *17 reserve to ourselves the right to decide upon such materiality. Not every allowance of claims against estates is sufficient to satisfy the above cited requirements of the statute, as is well demonstrated by the fact of various cases upon the subject. The part of the probate record which was placed in evidence indicates that there might have been consent, agreement or collusion, within the well known pronouncement in Freuler v. Helvering, 291 U.S. 35, as to render the transaction not binding on this Court. With only a partial transcript of the proceedings in the Probate Court before us, we are of course unable to determine that question. Omitted parts, including particularly some testimony which appears to have been taken, might affirmatively show such consent, agreement or collusion. The Probate Court's order does not per se prove otherwise. The facts must, of course, be shown. The petitioner urges that the burden was upon the respondent to show fraud. The cases have not shifted to the respondent the petitioner's burden of satisfying the statute as above epitomized, and petitioner cites none so indicating. Those facts shown tend, if anything, to indicate a proceeding "collusive *18 in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional [income] tax," - in the words of Freuler v. Helvering, supra.The court's order uses, in part, the precise language of section 812 (b) (4), Internal Revenue Code, finding the claims to have been incurred for "adequate and full consideration in money or money's worth." Nothing cited to us from the Ohio statutes as to probate orders upon claims against estates indicates that such a finding is under state law necessary, and our examination of the Ohio statutes fails to discover such requirement, but on the contrary such finding appears not to be necessary, either for allowance by executor or administrator, or by the Probate Court. Section 10509-114 of the General Ohio Code, as to authentication of claims, merely suggests an affidavit that the claim is "justly due, that no payments have been made thereon, and that there are no set-offs * * *." Section 10509-119 providing hearing by the Probate Court on claims suggests only that the court may "affirm, modify or reverse" the executor or administrator, *19 nowhere suggesting that the order pass upon the question of adequate and full consideration. All this points toward anticipation of section 812 (b) (4), Internal Revenue Code. We do not, however, considering the paucity of evidence here, affirmatively find the probate judgment to be collusive, by consent, or fraudulent; but only that the incomplete record before us fails to show the facts for determination of the matter. We conclude that the record before us does not prove the allowance by the Probate Court as required under the rationale of Freuler v. Helvering, supra. In addition it is to be noted that the partial transcript before us indicates that the moneys forming the basis of the claims were overassessments of taxes, allowed to decedent's daughters because of determination that income of an alleged partnership did not belong to the daughters, but to the decedent; and that the amounts of the overassessments were by the daughters turned over to the decedent, for payment upon the deficiency against him. It thus appears possible that the moneys which it is here claimed should constitute deductions, as claims against the estate, were merely *20 returned to the decedent by the daughters, after being found to arise from his income, not theirs. If so, there appears to be absence of bona fide contract or adequate and full consideration. Moreover, we must have other evidence on the matter of full and adequate consideration. The Probate Court here recited, as above noted, in its order that the claims were incurred "for adequate and full consideration in money or money's worth," using the language of section 812 (b) (4), Internal Revenue Code, and recited that decedent borrowed and his children loaned him certain moneys, in the amounts set forth in the schedule of debts; but the Probate Court's order in passing upon the adequacy of consideration is not conclusive here. Estate of Hugo Goldsmith, 36 B.T.A. 1201; Paul, Estate & Gift Taxes, p. 76; 1946 Supplement, p. 390; Giannini v. Commissioner, 148 Fed. (2d) 285; Taft v. Commissioner, 304 U.S. 351. See also Thomas Flexible Coupling Co. v. Commissioner, 158 Fed. (2d) 828. It is apparent from the statute, section 812 (b) (3) and (4), Internal Revenue Code, that there are two requirements *21 in proving deductions from gross estate, for claims: (a) a claim allowed by the law of the jurisdiction under which the estate is being administered, and (b) that the claim be proven (if founded upon promise or agreement - petitioner's theory here) to have been contracted bona fide and for adequate and full consideration in money or money's worth. We have no evidence on the subject, except the recitals in the Probate Court procedure, certified to us in part only. Recitals therein, from affidavits, though accepted by the Probate Court, are not (in the absence of agreement) acceptable as evidence in this Court. We find ourselves without evidence on the latter requirement of section 812 (b) (4) as to debts contracted bona fide for adequate and full consideration. In this connection, we note that the Probate Court's order, and the affidavits, recite that the loans to the father were to be repaid "at his convenience," and "as soon as such prepayment was convenient and practicable," - which at least raises a question as to whether the claims were based upon the necessary consideration. We do not, however, in the posture in which we find this case, regard it as necessary to pass upon the *22 point. For lack of proof we hold that the petitioner has not shown her right to deduction from gross estate of claims allowed by the law of the jurisdiction under which the estate of decedent was administered, contracted bona fide and for adequate and full consideration in money or money's worth. Decision will be entered for the respondent