Estate of Charles W. Law, Eugene J. Steiner, Pierce Law and C. Blair Law, Executors v. Commissioner.
Estate of Law v. Commissioner
Docket No. 1225-62.
United States Tax Court
T.C. Memo 1964-257; 1964 Tax Ct. Memo LEXIS 83; 23 T.C.M. (CCH) 1554; T.C.M. (RIA) 64257; September 29, 1964
Eugene J. Steiner and A. Rita Chandellier Glavin, for the petitioner. Joseph Wilkes, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner has determined a deficiency of $11,821.19 in estate tax. The issues left for decision are: [1]
1. Whether four promissory notes aggregating $10,000, given by Charles Law to Marlene Havens, gave rise to a valid claim against his estate so as to be deductible from his gross estate under section 2053(a)(3) of the Internal Revenue Code of 1954. [2]
2. Whether and to what extent the decedent, Charles Law, was indebted to Law Brothers Contracting Corporation, giving rise to a valid claim *85 against his estate so as to be deductible from his gross estate under section 2053(a)(3). 3. Whether and to what extent an income tax overpayment shown on the 1958 joint income tax return of the decedent, Charles Law, and his surviving spouse was includable in the gross estate of decedent. Findings of Fact Some of the facts have been stipulated and are so found. Charles W. Law (hereinafter referred to as the decedent) died testate on June 20, 1958. The decedent was a resident of Herkimer County, New York, at the time of his death. The decedent's sons, C. Blair Law and Pierce Law, together with Eugene J. Steiner, are the duly qualified executors of the decedent's estate. The estate tax return of decedent was filed with the district director of internal revenue at Syracuse, New York. The decedent was married to Elizabeth B. Law. There were three children of said marriage, two sons and a daughter. The decedent's family resided at 506 West German Street, Herkimer, New York. This also was where the decedent resided until a few years prior to his death. A few years prior to the decedent's death he opened an office in the town of Port Leydon, New York, which is north of Herkimer. *86 During this time the decedent did not live at his residence in Herkimer and after 1957 he never returned to Herkimer. For part of the time that the decedent maintained an office in Port Leydon, he lived at the Boonville Hotel in Boonville, New York. This hotel was owned and operated by Marlene Havens (hereinafter referred to as Marlene). Marlene is a divorcee with two sons. After a while the decedent moved into and lived in the home of Marlene and also maintained an office in her home. In the summer of 1957, while the decedent was living at the home of Marlene, he became ill. He visited numerous doctors and clinics. In December 1957 the decedent was admitted to a hospital in Boston, Massachusetts, where he underwent an exploratory operation. He remained in the hospital for approximately six weeks. During this time Marlene, who took the decedent to Boston, remained in Boston. When the decedent was released from the hospital, Marlene took him back to her home in Boonville and cared for him. Between March and April 1958 it was learned by the decedent that he was suffering from cancer. In June 1958 the decedent returned to the hospital, again being taken there by Marlene. Marlene remained *87 in Boston throughout the decedent's say in the hospital. At this time the decedent was in constant need of care and attention as he lost control of his bodily functions. Although Marlene did not have a room in the hospital, she spent many hours at the decedent's bedside giving what care and attention she could until the decedent's death on June 20, 1958. On April 26, 1958, the decedent executed his will, leaving his entire estate to be divided between his wife, daughter and two sons. Also on April 26, 1958, the decedent executed four noninterest-bearing promissory notes, each in the face amount of $2,500, payable to Marlene. The notes were payable at intervals of one year, beginning April 26, 1959. Shortly after the decedent's death, the three executors of his estate visited Marlene for the purpose of recovering a 1957 Cadillac automobile in her possession but registered in the name of Law Brothers Contracting Corporation. After some negotiations it was agreed to allow Marlene to keep the automobile in return for her cancellation of the last two of the four promissory notes. Law Brothers Contracting Corporation (hereinafter referred to as the corporation) is a New York corporation *88 with its office and principal place of business in Lyons Falls, New York. Of the 625 issued and outstanding shares of stock, the decedent owned 620 shares. The decedent was the president of the corporation at the date of his death. He had been an employee of the corporation for over 40 years. The corporation operated a retail lumber store under the trade name of Sweeney Lumber Company. This store has been operated under its trade name since 1950. Although the decedent had been very active in the corporation for 40 years, his physical condition prevented his performing any duties during the year 1958. During the first half of 1958 the decedent received $4,000 in cash from the corporation, less income tax withheld in the amount of $594. The corporation furnished the decedent's spouse with a Withholding Tax Statement, Form W-2, for the year 1958 showing wages of $4,000, withholding tax of $594, and F.I.C.A. tax of $90. Said amount of $4,000 was reported by the decedent's widow as income from wages in a joint income tax return for 1958, filed by her as surviving spouse. The decedent did not give the corporation a note for the $4,000. The decedent from 1953 until the date of his death did *89 use building supplies of the Sweeney Lumber Company for his own personal purposes. The items used were paint, nails, cement, stone and lumber. As of June 30, 1958, the decedent had used supplies totaling $2,954.61. The decedent did not give the corporation a note for the supplies. No part of the $2,954.61 had been paid to the corporation by the decedent prior to his death. The 1958 joint income tax return filed by the decedent's widow showed as total income representing the amount the decedent had received from the corporation. The return asked for a refund of $594 representing the income tax withheld by the corporation on the $4,000 paid to the decedent. On October 1, 1958, the decedent's will was admitted to probate by the Surrogate of Herkimer County, New York. On March 17, 1959, the estate of the decedent filed an estate tax return with the New York State Tax Commission. On April 26, 1963, a new estate tax return was delivered to a representative of the New York State Tax Commission. On June 21, 1963, the Surrogate issued an order which had the effect of fixing the amount of the State estate tax. In arriving at the estate tax the Surrogate allowed as a deduction the claim by *90 Marlene for $10,000 and the claim by the corporation in the amount of $6,900. [3] The New York State Tax Commission filed an appeal from this order on August 7, 1963, contesting the allowance of the aforementioned claims. Opinion Issue 1. Claim of Marlene Havens Petitioner, the Estate of Charles W. Law, maintains that the four promissory notes given by the decedent to Marlene on April 26, 1958, were given for good and valuable consideration and should be allowed as a deduction from the gross estate under section 2053. It is the position of petitioner that the consideration for the notes was the furnishing of room and board by Marlene, as well as the rendering of personal services in the nature of nursing care. Respondent, on the other hand, argues that petitioner has failed to prove that the notes were "contracted bona fide and for an adequate and full consideration in money or money's worth." We agree with respondent. *91 Section 2053 provides, in part, as follows: (a) General Rule. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts - * * *
(3) for claims against the estate, * * * as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. * * *
(c) Limitations. - (1) Limitations Applicable to Subsections (a) and (b). - (A) Consideration for Claims. - The deduction allowed by this section in the case of claims against the estate, * * * or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * * Petitioner has the burden of showing affirmatively the extent to which the notes in question were contracted for an adequate and full consideration. Edith M. Bensel, et al., Executors, 36 B.T.A. 246, 254 (1937), affd. 100 F. 2d 639 (C.A. *92 3, 1938). The fact that a claim may be allowed against an estate under State law is not controlling for Federal tax purposes. Estate of Emma Earle, 5 T.C. 991, 1000 (1945), affd. per curiam 157 F. 2d 501 (C.A. 6, 1946), certiorari denied 330 U.S. 822 (1946). The Federal taxing statute is clear. In order for a claim to be deductible from the gross estate, besides being bona fide, it must be contracted for "an adequate and full consideration in money or money's worth." Cf. Lillian T. Latty, Executrix, 23 B.T.A. 1250, 1256 (1931), affd. 62 F. 2d 952 (C.A. 6, 1933). Accordingly, it is immaterial that the claim was allowed by the Surrogate Court for the County of Herkimer, New York. Estate of Julius C. Lang, 34 B.T.A. 337, 344 (1936), affd. on this issue 97 F. 2d 867 (C.A. 9, 1938). Furthermore, the mere fact that a claim is enforceable under State law is not sufficient for a deduction for Federal estate tax purposes. Estate of Hugo Goldsmith, 36 B.T.A. 1201, 1205 (1937). As the Supreme Court in Taft v. Commissioner, 304 U.S. 351, 356 (1938), while tracting the *93 history of section 303(a)(3) of the Revenue Act of 1926, the ppredecessor of section 2053(c)(1)(A), pointed out, it was the evident purpose of Congress, in its numerous and successive changes of this provision of the Code, to narrow the class of deductible claims. Therefore, in the instant case it was incumbent upon petitioner to show not only that there was a claim against the estate recognized by the laws of New York, but that such claim was supported by adequate and full consideration in money or money's worth as that term is used in the revenue statutes. Estate of Rosalean B. Ottman, 12 T.C. 1118, 1121 (1949). A look at the evidence of record clearly indicates that petitioner has failed to show affirmatively that the notes in question were given for adequate and full consideration in money or money's worth. We know that on April 26, 1958, the decedent executed four promissory notes, each for $2,500 made payable to Marlene. There is no direct evidence indicating what the notes were given for. It is true petitioner argues that the notes were given as payment for room and board and for personal services rendered by Marlene in taking care of the decedent in his last *94 days. However, these are mere arguments and assertions by petitioner not supported by evidence of record. The record before us does not show that the decedent failed to pay for his room at the Boonville Hotel nor does the record show that he failed to pay for his room and board at Marlene's home. Furthermore, and what is even more important, the record is silent as to whether Marlene expected payment for these services from the decedent. The decedent's son was the only one called to testify regarding the notes. Most of his testimony was based upon statements made to him by persons, including Marlene, who were not called to testify. He did not know whether his father paid for his hotel room nor did he know from personal knowledge that his father ever borrowed funds from Marlene. Furthermore, there is nothing in the record indicating the notes in question were given by decedent to Marlene for the services she rendered in caring for the decedent. The burden of proof, as stated above, was on petitioner. The one person who might have shed some light on the reasons for the giving of the notes was Marlene. For some reason, not explained in the record, she was not called as a witness by petitioner. *95 As we stated in Wichita Terminal Elevator Co., 6 T.C. 1158, 1165 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947): The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable * * * This is especially true where, as here, the party failing to produce the evidence has the burden of proof * * * Although there is some evidence indicating that the consideration for the notes was the decedent's affection for Marlene, [4] which is not "an adequate and full consideration in money or money's worth," Estate of Hugo Goldsmith, supra, we need not decide this. All we decide is that on the evidence presented petitioner has failed to sustain its burden by showing that the consideration for the notes was "an adequate and full consideration in money or money's worth" as required by the statute. Petitioner having failed in its burden, we can not say that the disallowance of the claim by respondent was erroneous. *96 Issue 2. Claim of Law Brothers Contracting Corporation Petitioner contends that the decedent was advanced $4,000 by the corporation during 1958. Petitioner further contends that the decedent over a period of years used materials and supplies of the corporation for his own personal purposes. It is claimed that as of the decedent's death, he had used property of the corporation totaling $2,954.61. Petitioner argues that the $4,000 and the $2,900 [5] represented in effect a loan made to the *97 decedent from the corporation which was not repaid prior to the decedent's death and therefore it should be allowed as a claim against the estate, deductible from the gross estate. Respondent maintains that the $4,000 represents salary paid to the decedent and that petitioner has failed to establish a true debtor-creditor relationship with regard to the $2,900. We agree with respondent. The decedent was the president of the corporation up to the time of his death. He owned 99 percent of the issued and outstanding shares of stock of the corporation. He had been an employee of the corporation for over 40 years. During the year 1958 the decedent received $4,000 from the corporation. It is clear from the record before us that both the corporation and the decedent treated this amount as compensation and not as a loan. The corporation furnished the decedent's widow with Form W-2, Withholding Tax Statement, showing the $4,000 as wages and showing amounts withheld as income tax and F.I.C.A. tax. The widow, in filing a joint income tax return for 1958, listed the $4,000 as wages received from the corporation by the decedent and attached a copy of the Form *98 W-2 referred to above. We can not say on this evidence that the $4,000 received by the decedent from the corporation in 1958 was a loan and that the decedent at the time of receipt of the $4,000 intended to repay said amount or that the corporation intended to enforce such repayment. Cf. Clark v. Commissioner, 266 F. 2d 698, 710 (C.A. 9, 1959), affirming on this issue a Memorandum Opinion of this Court. The decedent, president and principal stockholder of the corporation, from as early as 1953 used materials and supplies of the corporation for his own personal purposes. As of his death the amount so used totaled $2,954.61. None of this amount had been repaid to the corporation by the decedent. The decedent never gave a note for his withdrawal, nor did he pay interest to the corporation. The record is silent as to how the corporation treated the withdrawal of its books. Nor do we have any evidence regarding a mautrity date by which the decedent was to make repayment. Whether withdrawals of this nature by the principal stockholder of a corporation are to be treated as loans *99 is a factual question depending upon all the facts and circumstances surrounding the transaction. Harry E. Wiese, 35 B.T.A. 701 (1937), affd. 93 F. 2d 921 (C.A. 8, 1938), certiorari denied 304 U.S. 589 (1938). When the withdrawals are made by a stockholder who is in substantial control of the corporation the situation demands special scrutiny. W. T. Wilson, 10 T.C. 251, 256 (1948), affd. sub nom. Wilson Bros. Co. v. Commissioner, 170 F. 2d 423 (C.A. 9, 1948), certiorari denied 336 U.S. 909 (1949). In our opinion the evidence of record falls far short of establishing that the withdrawals of materials by the decedent represented a loan by the corporation to him, which loan, being unpaid at the decedent's death, would qualify as a claim against the estate under section 2053(a). If the question before us was to determine whether the use of the corporation's materials and supplies by the decedent constituted a constructive dividend to him, we would not hesitate in answering the question in the affirmative. Elliott J. Roschuni, 29 T.C. 1193 (1958), affd. per curiam 271 F. 2d 267 *100 (C.A. 5, 1959), certiorari denied 362 U.S. 988 (1960). Suffice for us to hold here that the petitioner has failed to prove that the withdrawals constituted a valid claim against the estate. Issue 3. Income Tax Refund The last issue we have before us concerns whether or not a refund of income taxes for the year 1958 in the amount of $594 represents an asset of the decedent's estate in the full amount of the refund. The facts pertaining to this issue are as follows: In the early part of 1958 the decedent received $4,000 from the corporation which we have already held represents wages. The corporation furnished the decedent's widow with a withholding tax statement indicating that $594 had been withheld from the wages of $4,000. The decedent's widow, for the year 1958, filed a joint Federal income tax return listing as the only item of income the $4,000 referred to above. After claimed deductions and exemptions the tax on the $4,000 was zero. Accordingly, the widow requested a refund of $594, which amount was the tax withheld from the wages paid to the decedent. On these facts petitioner maintains that, at most, one-half of the refund could be includable in the estate *101 of the decedent. We disagree. It was the decedent who received the wages of $4,000. It was the decedent's wages which were subjected to withholding tax. The $594 withheld from the decedent's wages were his funds. The fact that the return filed was a joint return does not alter the fact that the funds making up the refund were the decedent's property, which at the date of his death constituted a valuable asset of his estate. And as such it was entirely proper for the respondent to include the entire refund as an asset of the estate. Estate of Laura Brown Chisholm, 26 T.C. 253, 257 (1956); section 2033. Furthermore, even if the refund could be considered jointly held property, the entire amount would still be included in the estate of the decedent since he had supplied the entire consideration therefor. Section 2040. Cf. Estate of Harold Loveland, 13 T.C. 5, 7 (1949). To properly reflect concessions made by both parties, Decision will be entered under Rule 50. Footnotes
1. Both petitioner and respondent have made concessions on other issues.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
3. The $6,900 consists of the $4,000 received by the decedent from the corporation in 1958 and $2,954.61 representing the total supplies of the corporation used by the decedent, rounded out to $2,900.↩
4. The fact that the decedent did not live with his family for the last two years of his life, the fact that the decedent lived in Marlene's home for the last year of his life, the fact that the notes in question were made out on the same date that the decedent executed his will, the fact that the notes and will were executed at a time when petitioner was aware of his state of health, and the fact that the decedent did not provide for Marlene in his will, all indicate that the consideration for the notes could have been the decedent's affection for Marlene, which is not sufficient to support a deduction under the statute. See Estate of Hugo Goldsmith, 36 B.T.A. 1201↩ (1937).
5. See footnote 3, supra.↩