ESTATE OF JOHN P. LYONS, AMELIA R. LYONS, ADMINISTRATRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Lyons v. Commissioner
Docket No. 6353-74.
United States Tax Court
T.C. Memo 1976-136; 1976 Tax Ct. Memo LEXIS 268; 35 T.C.M. (CCH) 605; T.C.M. (RIA) 760136; April 29, 1976, Filed Robert B. Milgroom, for the petitioner. Jack R. Selzer, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the estate tax of the estate of John P. Lyons in the amount of $40,747.94 and an addition to tax under section 6651(a), I.R.C. 1954, [1] in the amount of $10,186.99. The issues for decision are (1) whether respondent's determination as set forth in his notice of deficiency dated April 25, 1974, is arbitrary so as to place on *269 respondent the burden of proving the amount and value of all items which he determined were properly includable in the gross estate; and (2) if the burden of proof is not on respondent, has petitioner shown that certain of the items included in the gross estate were not property in which the decedent had an interest at the date of his death or that the valuation of the property included in the estate is erroneous. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. John P. Lyons (decedent) died testate on July 7, 1967. On September 6, 1967, Matthew S. Heaphy qualified as executor of decedent's estate in the Probate Court of Salem, Essex County, Massachusetts. Mr. Heaphy, as executor, filed an estate tax preliminary notice, Form 704, on November 9, 1967, in which he estimated the assets of the estate to consist of real estate in the amount of $225,000, insurance on decedent's life of $10,631, and other property of $100,000, making a total of $335,631. In the fall of 1969 Mr. Heaphy resigned as executor of decedent's estate and on *270 December 12, 1969, the Probate Court of Salem, Essex County, Massachusetts approved the appointment of decedent's widow, Amelia R. Lyons, as special administratrix of decedent's estate. On July 29, 1971, the Probate Court of Salem, Essex County, Massachusetts appointed Amelia R. Lyons as administratrix with the will annexed of decedent's estate. On December 3, 1971, Amelia R. Lyons as administratrix of decedent's estate filed a United States Estate Tax Return, Form 706, with the District Director of Internal Revenue, Boston, Massachusetts. At the time the petition herein was filed, Amelia R. Lyons, the then administratrix of decedent's estate by whom the petition was filed, resided at Beverly, Massachusetts. The due date of the estate tax return for decedent's estate was October 7, 1968. Decedent's will provided specific bequests to decedent's wife, Amelia R. Lyons, of decedent's interest in the Beverly Package Company, Inc., the Chester R. Milnes Insurance Agency, Inc., and the Humphrey Street Liquor Stores, Inc. A codicil to the will changed this bequest and left 50 shares of the stock of Humphrey Street Liquor Stores, Inc. to decedent's brother. The will made a bequest *271 to decedent's daughter, Claire Lyons, of all decedent's interest in the L. & G. Package Store, Inc. and in Laffy's, Inc. with the notation that the interest in Laffy's, Inc. had been established by "oral agreement to be a two-thirds interest in said business." The will provided that decedent's 70 percent interest in the Norwood Pond Realty Trust should go 40 percent to his daughter, Claire Lyons, and 30 percent to his wife, Amelia R. Lyons. The will contained the statement that by this bequest his wife and daughter would each own a 50 percent interest in the Norwood Pond Realty Trust since his wife then owned a 20 percent interest and his daughter a 10 percent interest. The residue of decedent's estate was left to his wife, Amelia R. Lyons. The Form 706, Estate Tax Return, filed by the administratrix on December 31, 1971, carried as the signature of the preparer "Robert B. Milgroom." On Schedule B, Stocks and Bonds, on this return appeared the following: Item
Description (including face amount * * *
Value at
No.
of bonds or number of shares)
Date of death
1
? Sh. Beverly Package Co., Inc.
$ Unknown
2
? Sh. Humphrey St. Liquor Stores,
Inc.
Unknown
3
? Sh. Chester R. Milnes Ins.
Agency, Inc.
Unknown
4
? Sh. L & G Package Store, Inc.
Unknown
5
? Sh. Laffy's, Inc.
Unknown
6
? Sh. Norwood Pond Realty Trust
Unknown
7
? Sh. Norwood Pond Realty Corp.
Unknown
8
? Sh. Norwood Realty Trust
Unknown
9
? Sh. Joseph S. Hills Agency, Inc.
Unknown
10
? Sh. Sword and Shield, Inc.
Unknown
11
Various Items
Unknown
*272 On Schedule C, Mortgages, Notes, and Cash, there appeared under description "Various Items" with value at date of death "Unknown." On Schedule D, Insurance on Decedent's Life, under description was a Franklin Life Insurance Co. policy valued at date of death at $10,631 and beneath it in the description column appeared the word "Unknown" and under value at date of death the word "Unknown." On Schedule E, Jointly Owned Property, there appeared under description "Various Items" with the value at date of death shown as "Unknown." On Schedule F, Other Miscellaneous Property, in answer to each of the first four questions appeared the word "Unknown." The answer to question five with reference to whether the decedent at the time of his death had a safe deposit box was "yes" with the location shown as "Beverly National Bank" and in answer to the question of the contents of the box appeared the following: Contents at date of death are still unknown. The safe deposit box was closed out by Matthew S. Heaphy, Esq., before Amelia R. Lyons was appointed Special Administratrix. "Straws" and their agents refused to cooperate. Under question six on Schedule F as to whether decedent at the *273 time of his death owned any other miscellaneous property not reportable elsewhere there appeared under description "Various Items" and under value at the date of death the word "Unknown." On Schedule G, Transfers During Decedent's Life, question one as to whether decedent made any lifetime transfers was answered "yes" and the answer to question 2(a) with respect to transfers made without adequate and full consideration in money or money's worth was "yes" as was the answer to question 3(a) with respect to such transfers within 3 years immediately preceding death. The remaining questions with respect to date and amount and character of the transfers and descriptions of items were filled in with such words as "Various," "Unknown," "Questionable," and under total value on this schedule was the word "Unknown." On Schedule H, Powers of Appointment, questions 1(a) and 2(a) with respect to decedent's possession of general power of appointment were answered "yes," but the remaining questions were answered "Unknown." In the description column were the words "Various Items" and under value at date of death the word "Unknown." Under Schedule J, Funeral Expenses and Expenses Incurred in Administering *274 Property Subject to Claims, the funeral expenses were listed as $1,907.91 with advertising as $32.40 and other items shown as "Unknown." On Schedule K, Debts of Decedent and Mortgages and Liens, the following appeared under "Debts of Decedent-Creditor and nature of claim, and allowable death taxes": Item
Debts of Decedent--Creditor and nature
No.
of claim, and allowable death taxes
Amount
1
The Beverly National Bank
$42,800.00
2
Merchants-Warren National Bank of Salem
8,730.89
3
Payments made by Matthew S. Heaphy,
Esq.
13,529.55
4
Finance Associates, Inc. -- Acct. #47
and #232
11,660.37
5
L & G Package Store, Inc.
6,631.89
6
Various Items
Unknown
Total
$ Unknown
Under "Mortgages and liens" appeared "Various Items" with the amount shown as "Unknown." On Schedule L, Net Losses During Administration and Expenses Incurred in Administering Property Not Subject to Claims, each item contained the notation "Various Items" with the amounts shown as "Unknown." On the front page of the estate tax return under "Computation of Tax" each item to be filled in was marked "Unknown" except the item for "Exemption" which was shown as $60,000 and the *275 items of "Credit for tax on prior transfers" and "Credit for foreign death taxes" which were shown as "None." Under date of June 15, 1972, Mr. Milgroom addressed a letter to the Internal Revenue Service in regard to decedent's estate in which he requested an examination at his office with respect to the estate's estate tax, assigning the following reasons for this request: 1. A "pro tanto" payment of about $131,000.00 was paid by the City of Beverly to the trustees of the Norwood Realty Trust. It appears that all of the shares of this trust were in the name of the decedent (see Schedule B, Item No. 8 of Form 706). If these funds are expended prior to your assessment, collection by you of your assessment may be jeopardized. 2. Since Internal Revenue Code Section 2002 imposes personal liability on the Administratrix for the payment of the correct Federal Estate Tax, application for determination of the amount of the tax and discharge from personal liability under Section 2204(a) is hereby made. 3. A Closing Letter will enable the Administratrix to file her Final Account with the Essex County Probate Court. The estate tax return was assigned *276 for examination to respondent's estate tax attorney (the examiner), Ferdinand S. Pascione. The examiner contacted Mr. Milgroom and held several conferences with him. He received from Mr. Milgroom a copy of a receipt from the Beverly National Bank with respect to items which had been pledged by decedent to secure loans, certificate of conditions of Norwood Pond Realty Corp., certain information with respect to Laffy's, Inc. and its successor, Sword and Shield, Inc., balance sheets for Humphrey Street Liquor Stores, Inc., Beverly Package Co., Inc., and L. & G. Package Store, Inc. He also received information with respect to life insurance policies and sales with respect to certain other items. The examiner then proceeded to review the records he received from Mr. Milgroom and to obtain information from the Beverly National Bank and other parties connected with the various organizations in which the documents he had obtained indicated the decedent may have owned an interest at the date of his death. In the corse of this investigation the examiner was given information with respect to the shares of stock which were pledged by decedent at the Beverly National Bank to secure loans *277 at the date of decedent's death, the amount of the outstanding balances of those loans at the date of decedent's death, the dividends that had been paid on various stocks to decedent's estate since decedent's death, and the list of stocks released to the administratrix of decedent's estate upon payment by the administratrix of the indebtedness due by the estate to the bank. He also obtained information from various third-party sources with respect to an attempted transfer by decedent approximately 2 years prior to his death of his stock interest in Laffy's, Inc., which later became Sword and Shield, Inc., to decedent's daughter, Claire Lyons, which intended transfer had not been completed because of no delivery of the stock certificates, and information with respect to an agreement between Amelia R. Lyons and Claire Lyons made on July 29, 1971, concerning payment of expenses of the estate and certain other agreements with respect to L. & G. Package Store, Inc., Laffy's Realty Trust, and Sword and Shield, Inc. He also obtained information indicating that shortly after the execution of the agreement in July 1971 decedent's daughter, Claire Lyons, was issued 50 of the 100 outstanding *278 shares of stock of Laffy's, Inc., now Sword and Shield, Inc., and information as to the book value and value of goodwill of Laffy's, Inc. The respondent's estate tax examiner spent 3 to 4 weeks in his investigation of the assets comprising decedent's estate, obtaining information both from the preparer of the estate tax return and from other parties. When he was able to, he examined stock transfer books of various corporations and the profit and loss statements of these corporations to determine the decedent's stock ownership at the date of his death and the value of the property interest owned by decedent at the date of his death. Respondent's notice of deficiency was issued on the basis of the investigation by the examiner. The summary of the determination of the value of the gross estate was listed in the notice of deficiency on the basis of this examination as follows: Taxable estate as shown
in return as filed
$0
Increases (decreases) to
taxable estate
a. Schedule B-Stocks & Bonds
$317,146.32
b. Schedule C-Mortgages, Notes
& Cash
19,217.97
c. Schedule D-Insurance on
Decedent's Life
10,631.00
d. Schedule E-Jointly owned
Property
7,264.99
e. Schedule F-Miscellaneous
Property
432.16
f. Schedule J-Administration Ex-
penses
(1,940.31)
g. Schedule K-Debts of Decedent
(51,350.89)
(*)
h. Schedule M-Marital Deduction
(67,714.24)
i. Specific Exemption
(60,000.00)
173,507.00
Taxable estate as revised
$173,507.00
*279 The schedule of stocks and bonds as contained in the statutory notice listed as item 1 shares of Beverly Package Co., Inc., $11,277.60. The valuation of $11,277.60 was arrived at on the basis that decedent at the date of his death owned 50 shares of Beverly Package Co., Inc. This conclusion was based on the fact that among the items pledged to the Beverly National Bank for security of decedent's loans at that bank were 50 shares of Beverly Package Co., Inc. stock consisting of 25 shares issued in the name of John P. Lyons, Certificate No. 5, and 25 shares issued in the name of Edward J. Foley, Certificate No. 7, and that these 50 shares were released to the administratrix by the bank upon payment of the loan. Also, the estate tax examiner determined that after the release of the stock to the administratrix by Beverly National Bank, the administratrix in 1973 sold 50 shares of Beverly Package Co., Inc. In fact, the decedent at the date of his death owned only 25 shares of Beverly Package Co., Inc. The 25 shares pledged to the Beverly National Bank represented by Certificate No. 7 issued *280 in the name of Edward J. Foley were in fact not owned by decedent. Edward J. Foley had been a business associate of decedent prior to decedent's death. The decedent's widow, Amelia R. Lyons, had herself, subsequent to decedent's death, purchased 25 shares of Beverly Package Co., Inc. from the individuals who owned the 50 shares of that corporation which were not owned by either decedent or Mr. Foley. All of the other items determined by respondent to be includable on Schedule B, stocks and bonds of a value of $317,136.42, were in fact owned by decedent at the date of his death. The valuation of those items was made either on the basis of book value of the stocks or sales of underlying property owned by the corporation from which the examiner computed a value for the stock. The valuation placed on the stock of Laffy's, Inc. should rather have been a valuation placed on Laffy's Realty Trust. The examiner did not prior to the issuance of the notice of deficiency, but later did, discover that on March 5, 1965, Laffy's, Inc. transferred its real property to Laffy's Realty Trust. The underlying valuation placed on the stock of Laffy's, Inc. was on the basis of the value of the property *281 which was in fact owned by Laffy's Realty Trust. Since decedent owned the same percentage interest in Laffy's Realty Trust as he had owned in Laffy's, Inc., there is no actual change in the valuation. The value placed on the shares of Sword and Shield, Inc. on the basis of the book value of the stock in fact is the book value, without including in book value the real property ownership of which had been placed in Laffy's Realty Trust prior to the change in name of the corporation known as Laffy's Inc.
At the date of decedent's death he owed two notes, one from Hills & Milnes Insurance in the face amount of $10,000 and another from Humphrey Street Liquor Stores, Inc. in the face amount of $7,500. These two notes were included in the gross estate at their face amount. Included in the gross estate as determined by respondent were the following items of jointly-owned property: Item 1
Beverly Cooperative Bank
$5,836.94
Item 2
46 Shares New England Electric
1,086.05
Item 3
18 shares North Shore Gas Co.
342.00
The deposits in the joint account at Beverly Cooperative Bank and the purchase of the shares of stock in the joint names of decedent and his wife in *282 New England Electric and North Shore Gas Co. had been made by decedent's wife with sums given to her by her husband for running their home and as a personal allowance over a period of over 20 years. Mrs. Lyons had other stock and other accounts in her name only which had also been acquired with sums given to her by her husband as a household or personal allowance. At no time from the date of her marriage to decedent in 1944 until subsequent to his death was Mrs. Lyons employed outside their home. ULTIMATE FACTS 1. The determination by respondent in his notice of deficiency of items includable in decedent's gross estate and the value thereof was not arbitrary and therefore the burden of showing error in the respondent's determination is on petitioner. 2. Respondent was in error in including 50 shares of stock of Beverly Package Company, Inc. at a value of $11,277.60 in decedent's gross estate rather than 25 shares at a value of $5,638.80. 3. Respondent was not in error in including in decedent's gross estate the value of the jointlyowned property of decedent and his wife which she purchased from moneys given to her by decedent. 4. Respondent was not in error in including *283 the notes of Hills & Milnes Insurance and Humphrey Street Liquor Stores, Inc. in decedent's gross estate at their face value since no evidence has been presented to show that these two notes had a value other than their face amount at the date of decedent's death. OPINION The issues here are purely factual. The trial of this case lasted for two days. The greater protion of the testimony dealt with the nature of the investigation made by the estate tax examiner, which examination formed the basis of the statutory notice of deficiency issued by respondent.Petitioner apparently was of the opinion that the burden was on respondent to prove that each item listed in the notice of deficiency was properly includable in decedent's estate and the value of each of those items, although petitioner's counsel was informed by the Court on several occasions during the trial of the case that unless he could show that respondent's determination was arbitrary there was no burden on respondent to show the correctness of the items included in the notice of deficiency. The estate tax examiner was a witness at the trial called by petitioner. After a detailed examination of this witness by petitioner's *284 counsel, it was clear that not only was respondent's determination based on his examination not arbitrary but that the estate tax examiner had done a thorough and comprehensive search for items properly includable in the estate, had consulted with the representatives of the administratrix, and had made a conscientious effort to accurately value each item. In fact, his determination of the items properly includable in the estate, with the exception of 25 shares of stock of Beverly Package Company, Inc., was shown to be accurate. There is ample evidence in the record which we have not recited in detail to support the conclusion that each of the items except the 25 shares of Beverly Package Company, Inc., which were included in the decedent's gross estate in respondent's determination were owned by decedent at the date of his death. There is detailed testimony with respect to the method of valuation used by the estate tax examiner and adopted by respondent in the valuation of each item set forth in the notice of deficiency. The method of valuation used by the estate tax examiner is an acceptable method and his investigation in arriving at the values he assigned to each item was thorough. *285 While there is some evidence in the record, inconclusive in nature but tending to indicate that some items included in the gross estate were somewhat overvalued and other items undervalued, this evidence is insufficient to warrant a holding that any of the values as determined by respondent in his notice of deficiency were erroneous. The overall indication of this evidence is that the total value of the gross estate as determined by respondent was less than the aggregate fair market value of all the assets of the estate at the date of decedent's death. The evidence does show that respondent overstated the gross estate by $5,836.94 because of improperly including in the gross estate 25 shares of stock of Beverly Package Company, Inc. which were not in fact owned by decedent at the date of his death. No other errors have been shown with respect to items included by respondent in the gross estate. Petitioner argues that the bank account and stock which were actually purchased in the joint names of decedent and Mrs. Lyons with money given to Mrs. Lyons by decedent should not be included in the gross estate. furnished. For 48 years the wife had nursed and looked after her husband *286 and he had an agreement with his wife that he would pay her $12.50 a week if she would nurse him and care for him. He had never actually paid anything on account of the $12.50 per week but told her that one-half of the joint account would be hers in accordance with his promise. In holding that the entire jointly-owned property was includable in decedent's gross estate, we stated, at 7: However, the petitioner must fail in this case, even though the record shows that there was a definite agreement under which the decedent was to pay his wife $12.50 a week during her life and the deposits in the joint accounts were fulfillments of his promise. Services performed by a wife under a marriage contract do not represent consideration in money or money's worth within the meaning of section 811(e)(1). Cf. Commissioner v. Wemyss,324 U.S. 303; Merrill v. Fahs,324 U.S. 308; Estate of Hugo Goldsmith,36 B.T.A. 1201, involving filial duties. * * * Here the arrangement between decedent and Mrs. Lyons was not as precise as the arrangement in *287 the Loveland case. The money she used to put in the joint account and buy the jointly-owned stock was money she saved from household funds and money given to her by her husband for her own personal expenditures. The money given to her for her personal allowance was for no consideration except a husband's general obligation to support his wife. The services performed by Mrs. Lyons in economically running the home were those normally expected of a wife. Therefore under our holding in the Loveland case, there has been no showing of full and adequate consideration for the portion of the funds she saved from household expenses or from her personal allowance from her husband. Petitioner has offered no evidence to justify the late filing of the return. Petitioner argued that the late filing was the fault of the former executor and not of the administratrix. Since it is the estate that is liable for the addition to tax under section 6651(a) when the return is untimely, it is immaterial whether the former executor or the present administratrix is responsible for the late filing. There is no showing that respondent erred in determining this addition to tax. Decision will *288 be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
*. As appears in statutory notice. Apparently, correct figure is: ($51,530.89).↩